**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JIE CUI, AKA Chet Chui,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 08-72936<br><br>Agency No.<br>A096-231-179<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 5, 2013—Pasadena, California

Filed April 10, 2013

Before: Consuelo M. Callahan, Sandra S. Ikuta, and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Callahan

## SUMMARY[*]

### Immigration

The panel denied a petition for review from the Board of Immigration Appeals' denial, on adverse credibility grounds, of asylum, withholding of removal, and protection under the Convention against Torture to a native and citizen of China who asserted a fear of persecution on account of his practice of Da Zang Gong or "DZ Gong."

The panel held that substantial evidence supported the immigration judge's adverse credibility determination based on pre-REAL ID Act standards. The panel explained that petitioner's travel to Mexico, his lack of efforts to then enter the United States, and his voluntary decision to return to China go to the heart of his asylum claim because they undermine his assertions that he feared persecution. The panel further explained that petitioner's faulty memory of whether he had to report to the police after an arrest, and his vague, if not inconsistent, statements about whether he had to report to the police when he returned to China were problematic, and that under the circumstances, it was reasonable to expect him to provide evidence to corroborate his arrests and beatings or of the arrests and beatings of other DZ Gong members.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Cindy S. Chang of Walnut, California, for Petitioner.

Michael F. Hertz, acting Assistant Attorney General; M. Jocelyn Lopez Wright, Charles S. Greene, III (argued), and Judith R. O'Sullivan, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

CALLAHAN, Circuit Judge:

Jie Cui, a native of China, seeks asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Cui claims that he has been, and will be, persecuted because of his practice of Da Zang Gong ("DZ Gong"). The Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") found that Cui was not credible. We affirm because the adverse credibility determination is adequately supported by the record and goes to the heart of his claim.

**I**

Cui was born in China in 1969 and attended Harbin University of Science and Technology, majoring in mechanical engineering. While at the university he joined the student democracy movement and helped lead demonstrations. Cui states that he was then investigated by the Communist Party and used as an example of having an incorrect "deep western freedom belief."

In 1992, after graduation, Cui was assigned to a machine factory but, because of his record in the student movement, he "was given nothing to do but receive political belief education everyday." He claims he was attacked by a Communist party officer in the factory because he secretly listened to a banned radio program.

In 1994, Cui met Master Yu Qi, the leader of DZ Gong, a teaching of Tibetan Buddhism. Cui was curious about the teaching and anxious to leave the factory, so he became a disciple of Master Yu. From 1994 to 1999, Cui traveled to different places in China arranging for and holding classes in DZ Gong.

Cui claims that in October 1999, two police officers came to his house, told him that DZ Gong was now a banned religious organization, confiscated his DZ Gong materials, and told him not to conduct further activities relating to DZ Gong. Cui states that thereafter authorities frequently came to his house to threaten him and to discourage him from practicing DZ Gong, but he continued to practice in secret.

Cui alleges that one night in December 1999, when he was teaching a DZ Gong beginners' class, four police officers came in and beat everyone with batons. He states that the officers arrested him and the other DZ Gong leader and took them to the police station where they were beaten, threatened and interrogated. Cui asserts that the officers questioned him about the whereabouts of Master Yu, and beat him when he said he did not know where Master Yu was. Cui was released after two weeks and warned that if he continued to practice DZ Gong, he would be detained even longer.

In his application for political asylum, Cui claimed that "[b]ecause of the tense atmosphere inside the country, on February 10, 2000, I and two other Gong teachers escaped to Mexico. Our purpose was to find a way to come to the United States and seek religious and political asylum."

Cui claims that during his two years in Mexico he endured hardships because of the language barrier, different religious beliefs, a lack of friends and relatives, and the high cost of living. He further stated that he could not find a way to enter the United States and that it was difficult to promote DZ Gong in Mexico. He claims that with their money running out and feeling homesick, when he and his colleagues heard that police in China were not arresting people anymore, they returned to China in May 2002 to reunite with their families.

Cui states that just two days after he arrived home, the police came to his home to arrest him, but they did not find him because he was cleaning the basement. He then went to his home town in a farm village, where he thought he would be safe. However, a week later on May 21, 2002, when he was teaching DZ Gong, the police came and arrested him.

Cui alleges that he was detained for two weeks in one facility and beaten. He states that the authorities had learned of his prior participation in the student movement and asked him questions about his role in the student movement as well as the whereabouts of Master Yu. He claims that they pushed his head into a bucket of water until he almost drowned, beat him with a baton on the back of his head until he passed out, made him stand outside in his underwear for a whole evening to feed the mosquitos, and on occasion denied him food.

Cui alleges that in June 2002, he was transferred to another jail, where he was again interrogated, beaten and tortured. He asserts that he was released at the end of November 2002 and warned that if he continued to practice DZ Gong he would again be arrested and detained for even longer.

Cui decided that DZ Gong would never be allowed in China, and after discussing the matter with his family, he left China for Mexico in March 2003, with the intent of seeking asylum in the United States. Within days of his arrival in Tijuana, Cui arranged to be smuggled into the United States. He relates that early in a morning he was hidden under a van, but half an hour later he was discovered by Border Patrol agents.

## II

A Notice to Appear charged Cui with being removable for having entered the United States without a valid entry document. Cui eventually applied for asylum,[1] and after several continuances had a hearing before an Immigration Judge ("IJ"). Cui testified and offered two witnesses: Master Yu and Mr. Shuang-Xi Yang. Both were practitioners of DZ Gong who had been granted asylum. Both had known Cui in China, but could not testify as to Cui's particular claims of

---

[1] Usually, an asylum application must be filed within a year of a person's entry into the United States. 8 U.S.C. § 1158(a)(2)(B). An untimely application may be considered when the Attorney General finds that extraordinary circumstances justify the delay in filing. 8 U.S.C. § 1158(a)(2)(D). Here, the IJ found the requisite extraordinary circumstances, noting that Cui's "failure to file his asylum application within one year of his arrival was beyond [his] control." The Government does not challenge this finding.

persecution. After a final hearing on August 27, 2007, the IJ noted that Cui admitted the allegations in the Notice to Appear, found Cui not to be credible, and denied him asylum, withholding of removal, and CAT relief. The IJ based his adverse credibility determination on five inconsistencies, two material omissions, nine instances of inherently implausible testimony, and a lack of corroborative evidence. Cui appealed to the BIA.

The BIA issued an opinion finding that the IJ's adverse credibility determination was not clearly erroneous and dismissing the appeal. The BIA stated:

> While we do not agree with the whole of the credibility determination – particularly with, e.g., the finding that the respondent was inconsistent with respect to when he got his visa to visit Mexico in 1999 and about where he was when he was discovered listening to the unauthorized radio program – we find that overall, other discrepancies, implausibilities, and the lack of corroborative evidence found by the Immigration Judge are sufficient to satisfy us that no clear error was committed in the rendering of the adverse credibility determination.

The BIA observed that the IJ correctly noted that Cui's written statement failed to mention that he was required to report weekly to the police station after his 1999 detention ended or that he was under police supervision when he left China in 2003. The BIA noted that these allegations were significant because Cui contends that he had to "escape" China and that the police were interested in him when he

returned to China in 2003. The BIA further noted the lack of any corroborative evidence of Cui's arrests or of the ban on DZ Gong. It also agreed with the IJ's determination that it was "implausible that someone would travel all the way from China to Mexico, with the claimed purpose of applying for asylum in the United States, and ultimately simply return to China despite fears of harm awaiting him there."

The BIA denied Cui's request for withholding of removal and for CAT relief, commenting: "[I]n the absence of credible evidence reflecting any reason why the Chinese government would seek [Cui], there is no evidence of a clear probability of torture at the instigation of, or with the consent or acquiescence of, current government officials."

## III

Where, as here, the BIA's decision incorporates part of the IJ's opinion as its own, we review both. *Aquilar-Ramos v. Holder*, 594 F.3d 701, 704 (9th Cir. 2010) (citing *Molina-Estrada v. I.N.S.*, 293 F.3d 1089, 1093 (9th Cir. 2002)). We review the BIA's findings of fact, including credibility findings, for substantial evidence and uphold the BIA's findings unless the evidence compels a contrary result. *Almaghzar v. Gonzales*, 457 F.3d 915, 920 (9th Cir. 2006); *see also Shrestha v. Holder*, 590 F.3d 1034, 1039, 1048 (9th Cir. 2010). "While the substantial evidence standard demands deference to the IJ, '[w]e do not accept blindly an IJ's conclusion that a petitioner is not credible. Rather, we examine the record to see whether substantial evidence supports that conclusion and determine whether the reasoning employed by the IJ is fatally flawed.'" *Gui v. I.N.S.*, 280 F.3d 1217, 1225 (9th Cir. 2002) (quoting *Osorio v. I.N.S.*, 99 F.3d 928, 931 (9th Cir. 1996)).

The applicant bears the burden of establishing eligibility for asylum through credible evidence. *See Liu v. Holder*, 640 F.3d 918, 925 (9th Cir. 2011); *Singh v. Ashcroft*, 367 F.3d 1139, 1142 (9th Cir. 2004); *Ghaly v. I.N.S.*, 58 F.3d 1425, 1428 (9th Cir. 1995). To prevail, an applicant must present substantial evidence that would support a finding that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Ali v. Holder*, 637 F.3d 1025, 1029 (9th Cir. 2011). "We have held that the uncorroborated testimony of the applicant, if credible, may be sufficient to sustain the applicant's burden." *See Jibril v. Gonzales*, 423 F.3d 1129, 1133 (9th Cir. 2005). "If the trier of fact either does not believe the applicant or does not know what to believe, the applicant's failure to corroborate testimony can be fatal to his asylum application." *Sidhu v. I.N.S.*, 220 F.3d 1085, 1090 (9th Cir. 2000); *see also Malhi v. I.N.S.*, 336 F.3d 989, 993 (9th Cir. 2003).

Here, because Cui filed his asylum application prior to May 11, 2005, the burden of proof provisions in the REAL ID Act of 2005 do not apply. Instead, "[w]hen the IJ denies asylum based 'on an adverse credibility determination, he must provide specific, cogent reasons to support his determination . . . [which] cannot be peripheral, but rather must go to the heart of petitioner's claim.'" *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) (quoting *Desta v. Ashcroft*, 365 F.3d 741, 745 (9th Cir. 2004)). In affirming the denial of relief in *Don*, we explained:

> Don's inability to "state as to when it was that this man who was the source of him having to flee his country started to work for him" went to the heart of Don's claim because it involved the very event upon which he

predicated his claim for asylum. *See Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir. 2001) (explaining that inconsistencies in the details of events that form the basis for the asylum claim, specifically "testimony about the events leading up to [petitioner's] departure," go to the heart of the claim, and support an adverse credibility finding); *see also Singh v. Gonzales*, 439 F.3d 1100, 1108 (9th Cir. 2006) (affirming that "[a] single supported ground for an adverse credibility finding is sufficient if it relates to the basis for petitioner's alleged fear of persecution and goes to the heart of the claim," and "[a]n inconsistency goes to the heart of a claim if it concerns events central to petitioner's version of why he was persecuted and fled") (citations, alteration, and internal quotation marks omitted).

476 F.3d at 741–42.

## IV

Cui's allegations, if true, might render him eligible for asylum, but he has not demonstrated that the IJ's credibility finding is not based on substantial evidence in the record. Rather than cite to the record, Cui primarily argues that the adverse credibility finding was based on misunderstanding and misinterpretation of the facts and not on the totality of the evidence. In support of his contention, Cui makes three legal arguments. First, citing *Damaize-Job v. I.N.S.*, 787 F.2d 1332, 1337 (9th Cir. 1986), Cui argues that discrepancies in an applicant's testimony cannot be viewed as attempts to

enhance his claim of persecution if they have no bearing on his credibility. Second, citing *Lopez-Reyes v. I.N.S.*, 79 F.3d 908, 911 (9th Cir. 1996), he asserts that an applicant's testimony is not lacking in credibility simply because it includes details not described in the asylum application. Third, citing *Maini v. I.N.S.*, 212 F.3d 1167, 1175 (9th Cir. 2000), Cui argues that an IJ's view of what a persecuted person should include in his asylum application has no weight in an adverse credibility finding. These arguments are unavailing.

Cui's challenge to the adverse credibility determination fails to show that the determination was not supported by substantial evidence. The IJ's determination that Cui's account of his two-year stay in Mexico and decision to return to China is incredible goes to the heart of his asylum claim. The IJ reasonably found that, if Cui's reason for going to Mexico was to escape political or religious persecution by seeking asylum in the United States, he surely would have made some attempt to enter the United States during the two years he resided in Mexico. Cui offers no explanation for his actions consistent with his alleged fear of persecution, but his testimony does suggest a much more likely motive for the trip: to teach DZ Gong in Mexico. Moreover, when the IJ asked him to explain his actions in Mexico, Cui was vague and evasive. The IJ also reasonably found that if Cui really feared persecution in China, he would have sought asylum in Mexico, and would not have chosen instead to voluntarily return to China. *See Loho v. Mukasey*, 531 F.3d 1016, 1017–18 (9th Cir. 2008) (holding that "[i]t is well established in this court that an alien's history of willingly returning to his or her home country militates against a finding of past persecution or a well-founded fear of future persecution"). Cui's ability to travel to Mexico, his lack of efforts to then

enter the United States, and his voluntary decision to return to China go to the heart of his asylum claim because they undermine his assertions that he feared persecution.

Similarly, Cui's faulty memory of whether he had to report to the police after his arrest in 1999 and his vague, if not inconsistent, statements about whether he had to report to the police when he returned to China in 2002 are problematic. It is reasonable to expect an individual to remember whether he had been ordered to report to the police on a weekly basis. Furthermore, the lack of any corroborative evidence of Cui's arrests and beatings or of the arrests and beatings of other DZ Gong members is especially damaging where, as here, the "trier of fact either does not believe the applicant or does not know what to believe."[2] *Sidhu*, 220 F.3d at 190.

In sum, although Cui's story, if true, might show persecution, the inconsistencies noted by the BIA are such that we are not compelled to accept it. Cui's inconsistent statements concerning police surveillance, his failure to explain why he did not seek to enter the United States during his two-year-stay in Mexico, and his voluntary return to China from Mexico, provide an adequate basis for the adverse credibility finding. *See Jibril*, 423 F.3d at 1135 (holding that testimony that is implausible in light of the background evidence can support an adverse credibility determination). Moreover, they go to the heart of Cui's asylum claim because

---

[2] Neither of Cui's witnesses, Master Yu and Mr. Shuang Xi, had any personal knowledge of Cui's arrests. Neither had seen Cui between the summer of 1993 and 2003.

they undermine his contention that he had to "escape" from China. The petition is **DENIED**.[3]

---

[3] The BIA denied Cui's requests for asylum, withholding of removal and relief under the CAT. Because Cui does not address withholding or CAT relief in his brief, he waived any objections to the denial of these requests. *See McMillan v. United States*, 112 F.3d 1040, 1047 (9th Cir. 1997). In any event, where, as here, the claim for withholding is based on the same facts as the claim for asylum, the failure to establish eligibility for asylum results in the failure to demonstrate eligibility for withholding. *See Halim v. I.N.S.*, 358 F.3d 1128, 1132 (9th Cir. 2004). While a petitioner can demonstrate eligibility for CAT relief despite an adverse credibility finding if "the State Department reports, standing alone, compel[] the conclusion that [petitioner] is more likely than not to be tortured" upon return, the State Department reports in this case do not compel such a conclusion. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (quoting *Almaghzar*, 457 F.3d at 922–23).