NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LKHAGVAA TSEREN, <br><br> Petitioner, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> Respondent. | No. 13-71836 <br><br> Agency No. A088-571-197 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 14, 2019[**]
San Francisco, California

Before: GOULD and IKUTA, Circuit Judges, and PEARSON,[***] District Judge.

Lkhagvaa Tseren, a native and citizen of Mongolia, seeks asylum and

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

[***] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

withholding of removal.[1]  The Immigration Judge ("IJ") found that Tseren was not credible and denied Tseren's claims for asylum and withholding of removal.  The BIA affirmed, citing inconsistencies in Tseren's narrative.  Tseren petitioned this court for review.  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition because Tseren's inconsistent and often contradictory statements concerning the events that led her to leave Mongolia support the BIA's adverse credibility finding.  *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (adverse credibility findings to be based on the "totality of the circumstances, and all relevant factors," including "consistency" of the evidence); *Shrestha v. Holder*, 590 F.3d 1034, 1043 (9th Cir. 2010).

Specifically, Tseren offered conflicting statements regarding the number of times she went to the police to discuss her husband's abuse.  On direct examination at the hearing before the IJ, Tseren testified that she went to the police following an altercation in April 2003 only once, in May 2003.  However, in her asylum application, Tseren declared that the police summoned her twice, once in May 2003 and once in June 2003.[2]  When confronted with this inconsistency, Tseren's

---

[1] Before the Board of Immigration Appeals ("BIA"), Tseren also sought relief under the Convention Against Torture ("CAT").  Tseren has not challenged the BIA's rejection of her CAT claim.  Tseren has therefore abandoned that claim before us.  *See Rizk v. Holder*, 629 F.3d 1083, 1090 n.3 (9th Cir. 2011).
[2] Tseren contends that the BIA erred in relying on this declaration because it "was poorly translated with errors" and not read back to Tseren in her native language.

2

only explanation was that she forgot that she had been summoned twice.

In her briefing Tseren contends that her statements are consistent because, she asserts, she went to the police voluntarily one time, in May 2003, while she was summoned the other, in June 2003. The record does not support Tseren's contention. At certain points Tseren stated that she voluntarily went to the police in May 2003, while at others she stated that she was summoned. Accordingly, Tseren's explanation does not resolve the inconsistencies in her testimony. The BIA's finding that Tseren testified inconsistently as to how many times she interacted with the police is supported by substantial evidence.

Tseren also made inconsistent statements regarding whether she accompanied her father and sister to the police station on one occasion. At the hearing, Tseren testified that her father and sister went to speak with the police without her after Tseren told them about the 2003 incident. But in connection with her asylum application, Tseren declared that she accompanied her father and sister.

Relatedly, Tseren gave inconsistent statements on what the police told her father and sister. At the hearing, Tseren testified that the police told her father and sister that she was to blame for starting the April 2003 altercation, but in a declaration she stated that the police said they "were just trying to figure out what

_____

Even if that is true, Tseren has not put forward any argument or evidence that the statements in the declaration that the BIA relied on were a translation error or a typo.

3

was going on."

Finally, Tseren was inconsistent on when her marriage ended. She told an asylum officer that her marriage ended in 2004, but she maintained at the hearing that her marriage ended in 2005. When asked during the hearing about the inconsistency, Tseren testified that she had "stated" the "wrong" date to the asylum officer. She offered no explanation for why she misremembered the year.

In light of Tseren's inconsistent statements, substantial evidence supports the BIA's adverse credibility finding. *See Jie Cui v. Holder*, 712 F.3d 1332, 1336 (9th Cir. 2013). Because Tseren has not presented a credible claim, the BIA properly denied her application for asylum and withholding of removal. *See id.* at 1336–38; *see also Liu v. Holder*, 640 F.3d 918, 925–26 (9th Cir. 2011).

**DENIED.**