FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 19 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MINGNAN DONG,<br><br>Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>Respondent. | No. 16-70543<br><br>Agency No. A205-181-381<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 11, 2022
Pasadena, California

Before: A. Wallace Tashima and Kenneth K. Lee, Circuit Judges, and Kathleen Cardone,[*] District Judge.

Opinion by Judge Cardone;
Dissent by Judge Tashima

---

[*] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

# SUMMARY[**]

## Immigration

Denying Mingnan Dong's petition for review of a decision of the Board of Immigration Appeals upholding the denial of his application for asylum and related relief on credibility grounds, the panel concluded that the agency's adverse credibility determination was supported by substantial evidence.

Dong sought asylum and related relief on the ground that he was persecuted in China for his Christian faith. In a statement in support of his application, Dong wrote that he was arrested at a church gathering and detained, and during that detention, the police beat him, questioned him about church activities, and forced him to sign a document stating that he would not participate in the church. Before an immigration judge, Dong later testified that he was detained for one week, during which he was interrogated twice. Dong also testified in response to questions regarding his injuries and failure to get medical care, and the IJ asked him to clarify other apparent discrepancies between his application and testimony.

In denying relief on credibility grounds, the IJ referenced (1) the omission of the first interrogation from Dong's written application and his suspect demeanor when explaining that omission, (2) his "less than candid" testimony about his injuries and failure to seek medical care, and (3) the questionable authenticity of his household registration.

The panel concluded that, in light of Dong's apparent demeanor, it was reasonable for the BIA to conclude that his omission of the first interrogation from his application, together with his questionable explanation for that omission, undermined his credibility. The panel explained that the omission was not enough to undermine his credibility, but Dong's shifting explanation could be reasonably viewed as internally inconsistent, and therefore, implausible. The panel also gave credit to the IJ's finding that Dong exhibited a suspect demeanor during this exchange, explaining that such findings merit special deference. The panel also explained that, although Dong's explanation for the omission may well be facially

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plausible, the agency specified cogent reasons for rejecting it.

The panel next concluded that the BIA reasonably concluded that Dong's questionable testimony about his injuries, and his failure to mention those injuries at all in his asylum application, supported the adverse credibility determination. Observing that it was not entirely clear from the transcript that Dong's story was inconsistent, the panel explained that the substantial evidence standard of review does not enable the court to substitute its judgment for the BIA's. Rather, the court must accept administrative findings of fact unless any reasonable adjudicator would be compelled to conclude to the contrary. Here, the panel concluded that a reasonable adjudicator could interpret Dong's testimony as waffling between inconsistent reasons for why he did not seek medical care and inconsistent descriptions of how serious his injuries were. The panel further noted that it must give special deference to the IJ's determination that this aspect of Dong's testimony was "less than candid."

The panel also concluded that the BIA reasonably determined that the notarized copy of Dong's household registration document, which the IJ found to be potentially fraudulent, supported adverse credibility. Noting that one suspect document is unlikely to constitute substantial evidence of adverse credibility on its own, the panel concluded that, under the totality of the circumstances, the BIA reasonably concluded that it supported the credibility determination.

The panel observed that this was a close case in which Dong offered facially plausible explanations for some, if not all, of the identified inconsistencies and omissions. However, the panel explained that plausible explanations do not always compel credence.

Dissenting, Judge Tashima wrote that the adverse credibility determination was based on purported inconsistencies between Dong's written application and his oral testimony that were, in fact, not inconsistent. Judge Tashima concluded that Dong's testimony was more detailed in some aspects than his written application, but that he provided reasonable and "eminently believable" explanations for not providing the details in his application. Judge Tashima also wrote that the agency did not provide any reasons for its rejection of Dong's explanations. Thus, Judge Tashima concluded that the totality of the circumstances did not support the adverse credibility finding.

# COUNSEL

Thomas J. Tarigo (argued), Law Offices of Thomas J. Tarigo, Los Angeles, California; Michael A. Rohr, Law Offices of Michael A. Rohr, West Covina, California; for Petitioner.

Nancy K. Canter (argued), Brendan T. Moore, and Matthew M. Downer, Trial Attorneys; Steven K. Uejio; Linda S. Wernery, Assistant Director; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C.; OIL, Civil Division/Office of Immigration Litigation, Department of Justice, Washington, D.C.; Chief Counsel ICE, Office of the Chief Counsel, Department of Homeland Security, San Francisco, California; for Respondent.

CARDONE, District Judge:

Mingnan Dong petitions for review of the Board of Immigration Appeals' (BIA) decision dismissing his appeal of the Immigration Judge's (IJ) denial of his applications for asylum and withholding of removal. Considering the totality of the administrative record, particularly the IJ's findings about Dong's demeanor and lack of candor, we conclude that the BIA's adverse credibility determination was supported by substantial evidence. Accordingly, the petition for review is denied.

## I.     BACKGROUND

Dong is a citizen of the People's Republic of China. He entered the United States on August 10, 2011, as a nonimmigrant student. On April 19, 2012, he applied for asylum, withholding of removal, and relief from removal under the Convention Against Torture, claiming that he was persecuted for his Christian faith in China. On May 24, 2012, he was issued a Notice to Appear for failing to comply with the conditions under which he was admitted into the country. On August 9, 2012, he appeared before the IJ, conceded removability, and renewed his application for asylum and other relief.

In a written statement attached to his application, Dong stated that he fled China for the United States after he was arrested and harassed by the police on account of his Christian faith. He stated that on April 10, 2011, he was arrested at a church gathering along with several other church members and detained. During

2

his detention, the police beat him and questioned him about church activities. They also forced him to sign a "guarantee letter," which stated that he would not participate in the church. After Dong was released, he was required to report regularly to the police station. Authorities also came to his home and threatened and harassed his family members.

On May 1, 2014, Dong testified before the IJ in support of his application and again described the 2011 incident. He testified that he was detained for one week, during which he was interrogated twice. The first interrogation occurred on the second day of his detention, when he was taken to an interrogation room and warned not to participate in church activities. Then on the fourth day, two officers questioned him about the church, and when he refused to talk, they punched and kicked him and beat him with their batons. During this second incident, the officers also forced Dong to sign the letter promising that he would not participate in church activities.

When the IJ asked whether he was injured during the second interrogation, Dong responded that he was "a little bit" injured and had bruising on his chest. He stated that he did not get medical care, and when asked why, he said that the police told him he could not see a doctor or tell anyone that "[he] suffered a beating by them." Suggesting this response was inconsistent, the IJ asked Dong whether the police told him he could not see a doctor or if they told him he could not tell

3

anyone about the beating.  Dong said he was not supposed to tell anyone about the beating.  The IJ then asked Dong if he could have seen a doctor, and he responded, "right."  On cross-examination, Dong was asked if his injuries were not serious enough to require medical care, and he also responded, "right."

At the hearing, the IJ asked Dong to clarify other apparent discrepancies between his application and his testimony:  First, she asked Dong why he did not mention in his application that he was interrogated twice.  Dong initially responded that he forgot, but then said he "didn't forget" and only mentioned the second interrogation because it was more serious.  The IJ then asked Dong why he did not refer to his injuries in his application, and he explained that he wanted to complete it quickly and "felt it was not necessary to, to extend excessive descriptions of th[e injuries]."

The government also challenged the authenticity of the notarized copy of Dong's Chinese household registration that he submitted as part of his application.  At the hearing, the government pointed out that the document indicates that Dong himself presented it to the notary, but it is dated after Dong left China for the United States.  Dong testified that his mother got the document notarized, and he did not know why it lists his name.

The IJ denied all three of Dong's claims for relief.  She found that his testimony was not credible, referencing (1) the omission of the first interrogation

4

from his written application and suspect demeanor when explaining that omission, (2) his "less than candid" testimony about his injuries and failure to seek medical care, and (3) the questionable authenticity of his household registration. She also considered two letters Dong submitted as evidence of his Christian faith and found that they did nothing to alter her conclusion. Finally, the IJ determined that, even if Dong's testimony were true, it would not establish that he was entitled to relief as it did not show past persecution.

The BIA dismissed Dong's appeal on credibility grounds alone, finding no clear error in the IJ's adverse credibility determination. Dong timely petitioned for review of the BIA's dismissal of his appeal of the IJ's denial of his applications for asylum and withholding of removal.[1] We have jurisdiction under 8 U.S.C. § 1252.

## II. DISCUSSION

## A. STANDARD OF REVIEW

"Where, as here, the BIA reviewed the IJ's credibility-based decision for clear error and 'relied upon the IJ's opinion as a statement of reasons' but 'did not merely provide a boilerplate opinion,' we look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Lai v. Holder*, 773 F.3d 966, 970 (9th

---

[1]The BIA also dismissed Dong's appeal of the IJ's denial of relief under the Convention Against Torture, but Dong does not challenge that denial on appeal. Nor does Dong challenge the agency's conclusion that the two letters submitted as evidence of his Christian faith were entitled to little weight. Accordingly, we consider neither issue.

Cir. 2014) (quoting *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008) (cleaned up)). "In so doing, we review here the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's oral decision in support of those reasons." *Id.*

We review the agency's factual findings, including credibility determinations, for substantial evidence. *Kumar v. Garland*, 18 F.4th 1148, 1153 (9th Cir. 2021). Under this standard, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Iman v. Barr*, 972 F.3d 1058, 1064 (9th Cir. 2020) (quoting *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1184 (9th Cir. 2016)). Thus, "only the most extraordinary circumstances will justify overturning an adverse credibility determination." *Id.* (quoting *Jin v. Holder*, 748 F.3d 959, 964 (9th Cir. 2014)).

## B. ANALYSIS

Dong contends that substantial evidence does not support the BIA's adverse credibility determination.

Under the REAL ID Act, an IJ's credibility determination may be based on

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country

6

conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim . . . .

8 U.S.C. § 1158(b)(1)(B)(iii). The statute requires a "healthy measure of deference to agency credibility determinations . . . because IJs are in the best position to assess demeanor and other credibility cues that [courts] cannot readily access on review." *Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010). But it "does not give a blank check to the IJ enabling him or her to insulate an adverse credibility determination from our review of the reasonableness of that determination." *Id.* at 1042. The IJ must still "provide specific and cogent reasons in support of an adverse credibility determination." *Id.* at 1043 (quoting *Malkandi v. Holder*, 576 F.3d 906, 917 (9th Cir. 2009)).

Inconsistencies in an applicant's testimony may support an adverse credibility determination. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). So too may an applicant's omission of information from a written application or interview that is later revealed through testimony. *See Lai*, 773 F.3d at 971 (collecting cases). Omissions, however, are less damaging to credibility than direct contradictions, and "the mere omission of details is insufficient to uphold an adverse credibility finding." *Id.* (quoting *Singh v. Gonzales*, 403 F.3d 1081, 1085 (9th Cir. 2005)).

"If the IJ relies upon purported inconsistencies to make an adverse credibility determination, the IJ must provide the noncitizen with an opportunity to explain each inconsistency." *Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th

7

Cir. 2022). "If that explanation is 'reasonable and plausible,' then the [IJ] 'must provide a specific and cogent reason for rejecting it.'" *Munyuh v. Garland*, 11 F.4th 750, 758 (9th Cir. 2021) (quoting *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011)).

In this case, the BIA affirmed the IJ's adverse credibility determination largely based on a finding that Dong testified inconsistently about two aspects of his story—(1) the number of times he was interrogated, and (2) the extent of his injuries from the second interrogation.

### 1.     Number of Interrogations

The BIA identified Dong's omission of the first interrogation from his application, together with his suspect explanation for that omission, as a basis for adverse credibility. Dong's written statement described only the second interrogation—he did not mention the first interrogation, where he was threatened and warned not to participate in church activities. At his hearing, the IJ asked Dong to explain the omission:

> Q: Sir, I'm wondering why in that statement, you did not mention that you were interrogated twice?
>
> A: It might be because I forgot.
> . . .
> Q: All right. So, sir, you forgot that you were interrogated twice?
>
> A: I didn't forget that I was interrogated two times. What I just now want to say was that I in my statement, I just mentioned the second time I was interrogated.

8

Q: But my question to you, sir, was why didn't you mention that you had been interrogated on two different occasions?

A: Because the second time when I was interrogated to my honest, to my feeling, experience, it was much [more] serious so I just put it down the second time.

Dong's omission of the first interrogation—a relatively insignificant event by his own account—is not enough to undermine his credibility. *See Singh*, 403 F.3d at 1085. And his responses to the IJ's questions could be understood as Dong's attempt to clarify that he inadvertently failed to include the incident in his application because he did not think it was particularly important. But the shifting explanation from, "It might be because I forgot" to, "I didn't forget" could also be reasonably viewed as internally inconsistent, and therefore, implausible. *See Munyuh*, 11 F.4th at 758.

And the IJ also found Dong exhibited a suspect demeanor during this exchange, which merits special deference. *See Ling Huang v. Holder*, 744 F.3d 1149, 1154 (9th Cir. 2014) (quoting *Singh-Kaur v. I.N.S.*, 183 F.3d 1147, 1151 (9th Cir. 1999)). Credibility determinations based on demeanor are given substantial weight "for the obvious reason that [the IJ] sees the witnesses and hears them testify, while [we] look only at cold records." *Shrestha*, 590 F.3d at 1041 (quoting *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 662 (9th Cir. 2003)). "[A]spects of the witness's demeanor—including the expression of his countenance . . . the

9

modulation or pace of his speech and other non-verbal communication . . . are entirely unavailable to a reader of the transcript." *Id.* (quoting *Mendoza Manimbao*, 329 F.3d at 662); *see also Jibril v. Gonzales*, 423 F.3d 1129, 1137 (9th Cir. 2005) ("[Special deference] is only proper . . . [because f]ew, if any, of these ephemeral indicia of credibility can be conveyed by a paper record of the proceedings."). So we accord IJs' determinations substantial deference in this context. *See Shrestha*, 590 F.3d 1041. Still, an IJ must identify "specific instances" in the record that reflect suspect demeanor and "may not rely on . . . naked conclusions . . . that the petitioner's demeanor undermined [his] credibility." *Id.* at 1042.

Here, the IJ explained that, when asked why he did not describe the first interrogation in his written statement, Dong took a "somewhat long pause" before answering. From a recording of Dong's testimony, the BIA confirmed that he paused for at least ten seconds. And the IJ noted that only when Dong "appeared to realize that his explanation [for the omission] was insufficient," did he change his answer. Because we lack the benefit of having observed Dong testify, we give credit to these findings. *See Mendoza Manimbao*, 329 F.3d at 662.

This case is unlike *Barseghyan*, in which we overturned an adverse credibility determination, largely because "neither the BIA nor the IJ provided a 'specific and cogent' reason for rejecting what appear[ed] to be a 'reasonable and

10

plausible' explanation" for a purported inconsistency. 39 F.4th at 1145 (quoting *Rizk*, 629 F.3d at 1088). Dong's explanation for omitting the first interrogation from his written application may well be facially plausible. Even so, the agency specified cogent reasons for rejecting it: Dong's long initial pause before answering, followed by a change in his explanation after he "appeared to realize [it] was insufficient." In light of Dong's apparent demeanor, it was reasonable for the BIA to conclude that his omission of the first interrogation from his application, together with his questionable explanation for that omission, undermined his credibility. *See Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011) (holding that the record supported IJ's well-considered decision to reject petitioner's plausible explanation for omissions).

### 2. Injuries and Medical Treatment

The next basis on which the BIA affirmed the IJ's adverse credibility determination was Dong's omission of his injuries from his application and his inconsistent testimony about his need for medical care. In his written statement, Dong described "pain" from the beating, but he did not mention injuries. Then at his hearing, he stated that he suffered bruising on his chest but never sought medical care:

Q: What injuries did you have?

A: Just, you know, have a black and blue on the front chest.
. . .

11

Q: And did you ever seek medical attention?

A: No . . . [b]ecause the police didn't allow me to see the doctor.

Q: Did you ask the police to see a doctor?

A: Yeah.

Q: And when did you ask them?

A: After I was beaten.

Q: And what did the police say?

A: Just they'll threaten me, didn't allow me to see doctor.

The IJ asked Dong to clarify:

Q: All right, sir, I have to get some clarification here. You just explained that you were only injured a little bit. And then when you were asked what injury you sustained, you said your chest area in the front was black and blue. Was that correct?

A: Yes.

Q: Why did you believe that you needed medical treatment?

A: Because I feel hurting so I need to see doctor.

Q: Did you seek medical attention after you were released?

A: No.

Q: Why not?
. . .
A: I was afraid of the police . . . . Because the police had said that I was not allow[ed] to see the doctor, to see any doctor.

Q: So the police told you, sir, at some point during your detention that you were never to see a doctor?

A: No.

Q: Well what did they tell you?

A: They stated that I was not supposed to say that I suffered a beating by them.

Q: All right. So they said not to tell anyone how you got your injuries. They did not tell you that you couldn't see a doctor. Is that correct?

A: But they said I was not supposed to see any doctor. I was not allowed.

Q: Well, sir, that quite frankly to me does not make sense. I'm going to be quite candid with you, sir. That does not make sense. They told you that you could not see a doctor or they told you that you couldn't tell anyone about how you got your injuries, which is it?

A: I was not allowed to say that I suffered a beating by them.

Q: So you could have gone to see a doctor after your release, is that correct?

A: Right.

Dong later conceded that his injuries "were not so serious as to require a trip to a doctor or a hospital visit" and that he "felt it was not necessary" to describe them in his written statement.

The IJ found that Dong's testimony about his injuries and failure to seek medical treatment was inconsistent and "less than candid" and that his explanation for omitting his injuries from his statement was insufficient. From the transcript, it is not entirely clear that Dong's story was inconsistent. One plausible, cohesive reading of Dong's testimony is that he initially felt he

13

needed medical care but did not seek it out because of police threats. Because he was ultimately able to recover without seeing a doctor, he felt, in retrospect, that his injuries were not that serious, so he omitted them from his application.

"Our standard of review, though, does not enable us to substitute our judgment . . . for the BIA's." *Alden v. Holder*, 589 F.3d 1040, 1046 (9th Cir. 2009). "We are required to accept administrative findings of fact 'unless any reasonable [adjudicator] would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)); *see also Zamanov*, 649 F.3d at 974. Dong testified first that he thought he needed to see a doctor but did not because the police forbade him. He later testified that his injuries were not so serious as to require medical attention. Certainly, a reasonable adjudicator could interpret Dong's testimony as waffling between inconsistent reasons for why he did not seek medical care and inconsistent descriptions of how serious his injuries were.

And we must give special deference to the IJ's determination that this aspect of Dong's testimony was "less than candid." *See Jibril*, 423 F.3d at 1137 ("[I]t would be extraordinary for a reviewing court to substitute its second-hand impression of the petitioner's demeanor, candor, or responsiveness for that of the IJ."). The IJ elaborated that she was concerned with Dong's "lack of candor in responding to questions regarding whether or not he suffered any injuries

14

during his asserted mistreatment." The IJ was in a much better position than we are now to pick up on the "ephemeral indicia of credibility" and cut through the ambiguities in Dong's testimony. *See id.*; *see also Shrestha*, 590 F.3d at 1041. In affirming the IJ's analysis, the BIA reasonably concluded that Dong's questionable testimony about his injuries, and his failure to mention those injuries at all in his asylum application, supported an adverse credibility determination.

### 3. Household Registration Document

Finally, the BIA found no clear error in the IJ's finding that the notarized copy of Dong's household registration document was potentially fraudulent, further supporting adverse credibility. The IJ explained that the document, which purports to be a copy of Dong's family household registration document, states that Dong presented the original registration document to the Chinese notary in July 2012—after he left China for the United States. At the hearing, Dong stated that, in fact, his mother presented the document to the notary, but he could not explain why it listed his name rather than hers. From this, the BIA reasonably concluded that the IJ did not err in finding the document suspect.

Although one suspect document is unlikely to constitute substantial evidence of adverse credibility on its own, under the totality of the circumstances, the BIA reasonably concluded that it supported the IJ's

credibility determination.  *See Yemaine-Berhe v. Ashcroft*, 393 F.3d 907, 911

(9th Cir. 2004) ("[T]he use of a fraudulent document may, considering the

totality of the record, lend support to an adverse credibility finding.").[2]

### III.   CONCLUSION

This is a close case, in which reasonable adjudicators could reach

different conclusions.  But "[t]o reverse the BIA finding we must find that the

evidence not only *supports* that conclusion, but *compels* it."  *Aden*, 589 F.3d at

1046 (alteration in original) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481

n.1 (1992)).  Dong offered facially plausible explanations for some, if not all, of

the inconsistencies and omissions identified by the IJ.  But plausible

explanations do not always compel credence.  *See Zamanov*, 649 F.3d at 974.

And the IJ offered specific, cogent reasons for rejecting Dong's explanations.

*See Munyuh*, 11 F.4th at 758.  Because the agency rested its adverse credibility

determination on substantial evidence, we do not disrupt it.

**PETITION FOR REVIEW DENIED.**

---

[2] A household registration is not the type of document an asylum applicant might use to escape persecution or gain entry to the United States, such that its fraudulence would not undermine an applicant's credibility.  *See, e.g.*, *Akinmade v. I.N.S.*, 196 F.3d 951, 955 (9th Cir. 1999) (holding that petitioner's use of a fraudulent passport to enter the country could not serve as a basis for adverse credibility).  Rather, Dong submitted the document as part of his application to corroborate his identity and establish where and with whom he lived in China.

16

*Dong v. Garland*, No. 16-70543

TASHIMA, Circuit Judge, dissenting:

The adverse credibility determination here was based on purported inconsistencies between Dong's written asylum application and his oral testimony that were, in fact, not inconsistent. Dong's testimony was more detailed in some aspects than his written application, but he provided reasonable and "eminently believable" explanations for not providing the details in his application. *Bhattarai v. Lynch*, 835 F.3d 1037, 1044 (9th Cir. 2016).

The requirement in 8 U.S.C. § 1158(b)(1)(B)(iii) that "inconsistencies 'be considered in light of the "totality of the circumstances, and all relevant factors"'" indicates that the agency has a duty to consider a 'petitioner's explanation for a perceived inconsistency and other record evidence that sheds light on whether there is in fact an inconsistency at all.' If that explanation is 'reasonable and plausible,' then the agency 'must provide a specific and cogent reason for rejecting it.'" *Munyuh v. Garland*, 11 F.4th 750, 758 (9th Cir. 2021) (first quoting *Shrestha v. Holder*, 590 F.3d 1034, 1043-44 (9th Cir. 2010); and then quoting *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011)). In this case, the agency did not provide any reasons for its rejections of Dong's reasonable and plausible explanations.

It is "well established in this circuit that 'the mere omission of details is insufficient to uphold an adverse credibility finding.'" *Iman v. Barr*, 972 F.3d 1058, 1067 (9th Cir. 2020) (quoting *Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014)). Moreover, "in general, 'omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony.'" *Id.* (quoting *Lai*, 773 F.3d at 971). Here, there were no direct contradictions in the evidence and testimony. Instead, Dong's testimony was "remarkably detailed, consistent with his written declaration, and plausible in light of the U.S. State Department report . . . in the record." *Bhattarai*, 835 F.3d at 1046.

The majority's decision to downplay the BIA's reliance on the purported inconsistencies and to focus instead on demeanor findings, which were themselves based on those purported inconsistencies, reveals the flaws in the agency's adverse credibility determination. The majority also cites the "special deference" owed the agency. Maj. Op. at 14. "While the substantial evidence standard demands deference to the IJ, '[w]e do not accept blindly an IJ's conclusion that a petitioner is not credible. Rather, we examine the record to see whether substantial evidence supports that conclusion and determine whether the reasoning employed by the [agency] is fatally flawed.'" *Jie Cui v. Holder*, 712 F.3d 1332, 1336 (9th Cir. 2013) (quoting *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002)); *see also Shrestha*,

2

590 F.3d at 1042 ("Despite our recognition that agency credibility determinations deserve substantial deference, the REAL ID Act does not give a blank check to the IJ enabling him or her to insulate an adverse credibility determination from our review of the reasonableness of that determination."). Here, not only was the agency's reasoning fatally flawed, but the totality of the circumstances does not support the adverse credibility finding.

I would grant the petition because the adverse credibility determination is not supported by the totality of the circumstances. I therefore respectfully dissent.

## I. Standard of Review

"Because 'the BIA reviewed the IJ's credibility-based decision for clear error and relied upon the IJ's opinion as a statement of reasons but did not merely provide a boilerplate opinion,' we review 'the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's . . . decision in support of those reasons.'" *Kumar v. Garland*, 18 F.4th 1148, 1152–53 (9th Cir. 2021) (quoting *Lai*, 773 F.3d at 970). "In the end we must affirm credibility findings only when they are supported by the 'totality of the circumstances.'" *Id.* at 1155 (quoting *Alam v. Garland*, 11 F.4th 1133, 1137 (9th Cir. 2021 (en banc)).

## II. Number of Interrogations

3

The BIA's first basis for the adverse credibility finding was the purported inconsistency about the number of interrogations Dong endured. The agency's finding that Dong's testimony about the number of interrogations was inconsistent with his asylum application statement does not withstand scrutiny – it is not supported by substantial evidence. Dong never wrote in his application that he was interrogated only once. He did not write about the number of interrogations, but instead focused on the salient point that he was beaten when he was interrogated, writing: "During interrogation, police attempted to force me to disclose other members and gathering sites, when I refused, they punched and kicked me, and used police club to whip upon me." Dong's testimony that the police interrogated him once earlier in his detention "did not conflict with the rest of [Dong]'s application or cast doubt upon the accuracy of it." *Lai*, 773 F.3d at 974; *see Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th Cir. 2022) (rejecting the agency's determination that the petitioner's testimony regarding how he got to the hospital after being tortured was inconsistent, reasoning, in part, that "[h]is written declaration does not specify how he arrived at the hospital (just that he went there)"); *Kumar*, 18 F.4th at 1154–55 (rejecting the BIA's finding that a letter conflicted with the petitioner's testimony because it did not describe one of four attacks, stating that the letter did not undermine his testimony but bolstered it by

4

corroborating three of the four violent incidents).   "This alleged inconsistency does not support an adverse credibility determination because it is not, in fact inconsistent."   *Barseghyan*, 39 F.4th at 1143.

When asked why he did not write about the initial interrogation, Dong explained that "the second time when I was interrogated to my honest [*sic*], to my feeling, experience, it was much serious so I just put it down the second time." By Dong's own account, the initial interrogation was not very serious because he merely was warned not to participate in church activities.   It makes sense that Dong did not write in his asylum application about an incident in which nothing happened other than being warned not to participate in church activities and instead focused on the fact that he was beaten during a police interrogation. Dong's explanation that he focused on the more serious interrogation is "'reasonable and plausible,'" and the agency did not provide a reason for rejecting it.   *Munyuh*, 11 F.4th at 758 (quoting *Rizk*, 629 F.3d at 1088).

The majority essentially concedes that there was no inconsistency and so relies on the following exchange to conclude that Dong's explanation for not writing about the initial interrogation was "internally inconsistent, and therefore, implausible."   Maj. Op. at 9.    This conclusion is not supported by the record. Dong answered the IJ's questions as follows:

5

Q:      Sir, I'm wondering why in that [written] statement, you did not mention that you were interrogated twice?

A:      It might be because I forgot. . . .

Q:      All right.   So, sir, you forgot that you were interrogated twice?

A:      I didn't forget that I was interrogated two times.   What I just now want to say was that I in my statement, I just mentioned the second time I was interrogated.

Q:      But my question to you, sir, was why didn't you mention that you had been interrogated on two different occasions?

A:      Because the second time when I was interrogated to my honest, to my feeling, experience, it was much [more] serious so I just put it down the second time.

There is no inconsistency in Dong's answers.   He explained that he forgot to write about the first interrogation in his written statement because it was not that serious. *See Kumar*, 18 F.4th at 1154 ("Being 'beaten on [one's] arms and legs' is not inconsistent with being 'beaten all over [one's] body.'   Nor are the accounts conflicting simply because one recounting of a violent attack was more detailed than the other.").

Contrary to the majority's conclusion, there was no "shifting explanation from, 'It might be because I forgot' to, 'I didn't forget.'"   Maj. Op. at 9. Clearly, his first statement that he might have forgotten was a response to the question of why he did not write about the initial interrogation:   he forgot to write

6

about it in his application because the first interrogation was inconsequential compared to the second one when he was beaten. His second statement that he did *not* forget was in response to the IJ's question whether he forgot that he had been interrogated twice: he did not forget. These are not inconsistent statements but answers to two different questions. To construe this as inconsistent is illogical and twists the record in order to uphold a finding that, in fact, is not supported by the record.

This case is unlike *Silva-Pereira v. Lynch*, 827 F.3d 1176 (9th Cir. 2016), in which the petitioner testified about three violent incidents that he did not report in his asylum application: (1) he was threatened at gunpoint; (2) police hit him with a rifle, forcibly took his cell phone, and threatened his son at gunpoint; and (3) police entered his house without a warrant, assaulted him, and frightened his children. *Id.* at 1181. The petitioner there testified that the incidents "left him with permanent injuries and provoked extreme psychological trauma in his children." *Id.* at 1186.

By contrast, Dong testified, but did not write, about an interrogation in which nothing happened to him other than being warned not to participate in the church. This is nothing like the three violent incidents in *Silva-Pereira*, which were "'pivotal events' that were 'crucial to establishing' that Silva actually

7

suffered persecution." *Id.* (quoting, first, *Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003), then *Kin v. Holder*, 595 F.3d 1050, 1057 (9th Cir. 2010)).

Although the agency's demeanor determination is entitled to deference, "an IJ's determination that a petitioner's testimony is 'evasive' or 'unresponsive' may be insufficient to support an adverse credibility finding." *Jibril v. Gonzales*, 423 F.3d 1129, 1137 (9th Cir. 2005). The majority relies on *Ling Huang v. Holder*, 744 F.3d 1149 (9th Cir. 2014), but there the credibility determination was based on the IJ's observations about the petitioner's demeanor throughout her entire testimony, as well as the IJ's finding that the testimony was "extremely superficial" and not "persuasive or sufficiently specific to carry her burden of proof," and that the testimony was "not supported by reasonably obtainable corroborating evidence." *Id.* at 1155. Thus, the demeanor finding in *Ling Huang* was quite unlike the situation here, where the demeanor finding was based solely on Dong's attempts to explain perceived inconsistencies that were not in fact inconsistent.

## II.  Injuries and Medical Attention

The BIA further relied on Dong's failure to mention his black and blue marks in his written statement and purported inconsistences about whether the police warned him not to seek medical attention. Neither of these findings of

8

inconsistency is supported by substantial evidence.

When asked if he was injured by the police beating, Dong replied, "a little bit." Counsel asked, "[w]hat injuries did you have," and Dong stated, "[j]ust . . . a black and blue on the front chest," "[n]othing else." It is evident from Dong's testimony that he did not consider his injuries to be significant, which explains his failure to mention them in his written statement. Instead, his written statement focused on the pertinent information that he was beaten, forced to agree to the conditions of the guarantee letter, and thus had lost his religious freedom. Dong's explanation that he "felt it was not necessary" to include "excessive descriptions" of the black and blue marks in the written statement is consistent with his testimony that he did not consider his injuries to be that serious.[1] *Cf. Ruiz-Colmenares v. Garland*, 25 F.4th 742, 750 (9th Cir. 2022) (relying in part on the petitioner's omission of details, "including that his eyebrow was allegedly busted-open wide enough that he should have received stitches," to affirm adverse credibility finding). The agency did not provide a specific and cogent reason for rejecting Dong's reasonable explanation. *Munyuh*, 11 F.4th at 758.

---

[1] Moreover, there is no inconsistency between Dong's written statement that he was punched and kicked, and his testimony that he subsequently had black and blue marks on his chest.

9

The BIA also relied on purported inconsistencies in Dong's testimony regarding his decision not to seek medical attention. This finding is not supported by substantial evidence because there was no inconsistency.

Dong testified that, after he was beaten, he asked the police if he could see a doctor, but the police refused. The IJ then asked Dong a series of questions and found his answers to these questions to be inconsistent:

Q: Why did you believe that you needed medical treatment?

A: Because I feel hurting so I need to see doctor.

Q: Did you seek medical attention after you were released?

A: No.

Q: Why not?

A: I was afraid.

Q: Afraid of what?

A: I was afraid of the police.

Q: Sir, why would you be afraid of the police in terms of it preventing you from seeking medical treatment?

A: Because the police had said that I was not allow[ed] to see the doctor, to see any doctor.

Q: So the police told you, sir, at some point during your detention that you were never to see a doctor?

10

A: No.

Q: Well what did they tell you?

A: They stated that I was not supposed to say that I suffered a beating by them.

Q: So they said not to tell anyone how you got your injuries. They did not tell you that you couldn't see a doctor. Is that correct?

A: But they said I was not supposed to see any doctor. I was not allowed.

Q: Well, sir, that quite frankly to me does not make sense. . . . They told you that you could not see a doctor or they told you that you couldn't tell anyone about how you got your injuries, which is it?

A: I was not allowed to say that I suffered a beating by them.

Q: So you could have gone to see a doctor after your release, is that correct?

A: Right.

It is not inconsistent for Dong to testify that the police told him both not to see a doctor and not to tell a doctor how he was injured. Clearly the police did not want Dong to let a doctor know that they had beaten him, and telling him not to see a doctor and not to tell a doctor how he was injured are consistent messages, both of which would further that goal. As in *Barseghyan*, "[t]he government manufactures a discrepancy by characterizing the factual situation as an 'either/or' situation." *Barseghyan*, 39 F.4th at 1145. The IJ's finding that Dong's testimony

11

was inconsistent is not supported by substantial evidence.

The majority states that we must "give special deference to the IJ's determination that this aspect of Dong's testimony was 'less than candid.'" Maj. Op. at 14. However, it is not clear what part of this testimony is "less than candid." Simply stating that it was not candid does not make it so. Dong's testimony is not inconsistent. To the contrary, it makes perfect sense.

This court explained in *Shrestha* that, "[a]lthough we don't expect an Immigration Judge to search for ways to sustain an alien's testimony, neither do we expect the judge to search for ways to undermine and belittle it." *Shrestha*, 590 F.3d at 1040 (quoting *Shah v. Att'y Gen. of U.S.*, 446 F.3d 429, 437 (3d Cir.2006)). Dong's testimony about his interrogation, injuries, and decision not to seek medical attention was not inconsistent with his written statement, and the IJ undermined his testimony by creating false inconsistencies.

## III. Intentionally Vague

The BIA also relied on the IJ's finding that Dong "intentionally provided vague, generalized information in his written statement" in order for him to embellish his claim through his testimony about the number of interrogations and the black and blue marks. This finding not only is unsupported by the record but is contradicted by the record because Dong's testimony about the first interrogation

12

and the black and blue marks did not embellish his claim.

"In the context of credibility determinations, the principal danger we associate with omissions are last-minute attempts to use new allegations to artificially enhance claims of persecution. That danger is particularly acute where newly introduced information contains allegations crucial to establishing the applicant's central claim." *Iman*, 972 F.3d at 1068. Here, Dong's testimony did not contain new allegations crucial to establish his central claim, but details he did not consider to be significant. For example, Dong's testimony that he was injured only "a little bit," cannot be characterized as "embellish[ing]" his claim. Instead, he was downplaying the significance of his injuries. The record thus clearly shows that the omitted details did not embellish Dong's claim but rather diminished his claim because, by his own account, they were not that significant.

Nor can Dong's written statement be characterized as vague and general. To the contrary, he wrote in detail about his decision to become a Christian and his arrest – all of which was consistent with his testimony. He also wrote in detail about the police beating him when he refused to disclose church members' names and gathering sites and the conditions of the letter he was forced to sign, which also was entirely consistent with his testimony. His written statement was not vague – instead, it contained the significant details of his claim, and those details

13

were consistent with his in-court testimony.

As in *Iman*, "the omitted information was not *inconsistent* with the statements in [Dong's] asylum application . . . or any other evidence in the record." *Id.* "This is not a case where contradictory or even impeaching information came out." *Lai*, 773 F.3d at 974.

## IV. Church Letters

Nor is the agency's finding that Dong's letters from his church do not corroborate his faith supported by substantial evidence. The letters corroborated Dong's testimony about the name of the church, his participation in church activities, and his testimony that the church did not have a pastor. It is not clear what more the letters could possibly state in order to corroborate Dong's faith.

## V. Household Certificate

The only remaining basis for the adverse credibility finding is the household notarial certificate, which indicated that Dong provided the original household register to the notary on July 3, 2012, even though Dong was in the United States at the time. Dong testified that his mother obtained the notarial certificate of the copy of the household register for him, explaining that the original remained at his parents' home in China. He did not know why the certificate had his name on it because his mother was the one who obtained it. Examining the totality of the

14

circumstances, this is not sufficient on its own to support the adverse credibility finding.[2]

## VI. Conclusion

"An IJ may not 'cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result.'" *Munyuh*, 11 F.4th at 758 (quoting *Shrestha*, 590 F.3d at 1040)). Dong's written statement and his testimony are consistent regarding the details of his conversion to Christianity, his arrest and detention, and the conditions of his release. His description of his treatment is supported by the State Department report in the record. This court has explained that "we must affirm credibility findings only when they are supported by the 'totality of the circumstances.'" *Kumar*, 18 F.4th at 1155 (quoting *Alam*, 11 F.4th at 1137). The totality of the circumstances here does not support the adverse credibility finding.

Because, for the reasons stated above, I would grant the petition for review, I respectfully dissent.

---

[2] As the majority recognizes, the IJ found only that this document was "potentially fraudulent." Maj. Op. at 15. Neither the IJ, the BIA, nor the majority adequately explains how a "potentially" fraudulent document, standing alone, can constitute substantial evidence supporting an adverse credibility finding.