**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| BHUPINDER KUMAR, *Petitioner,* v. MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 17-73412 Agency No. A202-080-566 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 15, 2020[*]
Submission withdrawn March 2, 2021
Resubmitted November 22, 2021[**]
San Francisco, California

Filed November 30, 2021

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The panel withdrew this case from submission on March 2, 2021, pending the court's decision in *Alam v. Garland*, 11 F.4th 1133 (9th Cir. 2021) (en banc). The panel now unanimously concludes that this case remains suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: M. Margaret McKeown and Jacqueline H. Nguyen, Circuit Judges, and Eric N. Vitaliano,*** District Judge.

Opinion by Judge McKeown

**SUMMARY****

**Immigration**

Granting Bhupinder Kumar's petition for review of a decision of the Board of Immigration Appeals upholding the denial of Kumar's application for asylum and related relief on adverse credibility grounds, the panel concluded that the bulk of the credibility findings in this case were infirm, and remanded.

Kumar, who was born in India and belonged to a caste considered to be of lower social standing, joined the Bahujan Samaj Party ("BSP") because of its opposition to the caste system. He asserted that as a result of his work for the BSP, he was beaten four times by the police and members of opposing parties. An immigration judge denied his application for asylum and related relief, and the BIA dismissed Kumar's appeal.

---

*** The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

**** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel explained that under the REAL ID Act, IJs must base credibility determinations on "the totality of the circumstances, and all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii). However, even after the REAL ID Act, this court followed its "single factor rule," under which the court would affirm an adverse credibility finding so long as one of the grounds on which that finding was based was supported by substantial evidence and went to the heart of the claim. In *Alam v. Garland*, 11 F.4th 1133 (9th Cir. 2021) (en banc), the court held that the REAL ID Act abrogated the single factor rule and that the court must affirm credibility findings only when they are supported by the totality of circumstances.

Applying this standard, the panel considered the four factors that the BIA relied on in upholding the adverse credibility determination here. First, as to the finding that Kumar provided inconsistent statements, the panel concluded that two of the three alleged testimonial inconsistencies were in fact not inconsistent at all. Second, as to the finding that a third-party letter conflicted with Kumar's testimony, the panel concluded that the inconsistency was wholly illusory. Third, as to the finding that it was implausible that Kumar would not have suffered more injuries after a certain attack, the panel concluded that the basis for this conclusion relied entirely, and improperly, on conjecture. Fourth, as to the IJ's conclusion that Kumar's affect suggested that he was reciting a rehearsed story, rather than relating incidents he had personally experienced, the panel concluded that the IJ's perception of Kumar's demeanor passed the low bar for reviewing such findings.

The panel observed that the court declined to draw a bright line or engage in a number-counting analysis in *Alam*, instead noting that no specific number of inconsistencies

requires sustaining or rejecting an adverse credibility determination. The panel also observed that post-*Alam* precedents suggest that falsehoods and fabrications weigh particularly heavily in the credibility inquiry, but explained that clear falsehoods and fabrications were entirely absent here.

Acknowledging that the "totality of circumstances" review permits the court to uphold an adverse credibility finding, even where the court concludes that some of the grounds are not supported by substantial evidence, the panel concluded that the several rejected findings here all but gutted the adverse credibility determination. The court remanded to the BIA to determine in the first instance whether the remaining factors—considered on their own—suffice to support an adverse credibility determination.

## COUNSEL

Pardeep S. Grewal, Law Offices of Pardeep S. Grewal, Castro Valley, California, for Petitioner.

Matthew A. Connelly, Senior Litigation Counsel; Papa Sandhu, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

McKEOWN, Circuit Judge:

Under the REAL ID Act, Immigration Judges ("IJs") must base credibility determinations on "the totality of the circumstances, and all relevant factors." 8 U.S.C. 1158(b)(1)(B)(iii). However, even after the passage of this Act, we continued to follow our historical rule that when an IJ made an adverse credibility finding based on multiple grounds, we would affirm that finding "[s]o long as one of the identified grounds [wa]s supported by substantial evidence and [went] to the heart of [the] claim." *Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir. 2003). We called this "the single factor rule." Now all of that has changed following the recent en banc decision in *Alam v. Garland*, in which we held that the REAL ID Act abrogated the single factor rule and that we must affirm credibility findings only when they are supported by the totality of circumstances. 11 F.4th 1133, 1137 (9th Cir. 2021) (en banc). Hewing to the REAL ID Act and to the holding in *Alam*, we conclude that the bulk of the credibility findings in this case are infirm. We remand to the BIA to determine whether the few remaining factors are sufficient—in light of the totality of circumstances—to support such a finding.

**I. BACKGROUND**

Kumar was born in Punjab, India in 1979. He belonged to a "Scheduled Caste"—considered to be of lower social standing—and he joined the Bahujan Samaj Party ("BSP") in 2007 because of the party's opposition to the caste system. In 2013, Kumar was appointed the BSP leader for his village. He asserts that as a result of his work for the BSP, he was beaten four times between January 2013 and April 2014 by both the police and members of opposing political parties.

The first incident took place in January 2013, when the police arrested Kumar, accused him of "forcing people to join BSP," stripped him naked, beat him with wooden batons, and subjected him to electric shocks. The police threatened to kill Kumar if he continued working for the BSP. Once released from the police station—four to five hours after his arrest—he was "unable to even stand up" and was taken to the hospital where he was bandaged and given painkillers and "glucose injections."

Undeterred, Kumar continued working for the BSP, and a few months later, while out campaigning, members of opposing political parties approached him and demanded that he shift allegiances and work for them. They beat him with baseball bats when he refused. His friends "tried to save" him, but the beating—which lasted "about half an hour"—did not end until a crowd gathered. Kumar returned to the hospital and received a similar treatment of painkillers, glucose injections, and bandages. He spent fifteen days recovering. He attempted to report the attack, but the police refused to document it, telling him that "we've already warned you to stay away from the BSP."

The same opposition party members approached Kumar several months later. Once again, they demanded that he work for them, he refused, and they beat him. This time he lost consciousness. He woke up in a nearby clinic, where he received the same treatment as before. The same events unfolded once more a few months thereafter: members of opposition parties beat Kumar until he lost consciousness, and he woke up in a nearby clinic.

Less than two months later, in June 2014, Kumar left his home in India to come to the United States. His family reports that since he left, opposing political party members

have asked about his whereabouts and made threats should they find him.

Kumar arrived in the United States in August—entering near Hidalgo, Texas without a valid entry document. He was apprehended immediately and given a Credible Fear Interview ("CFI") soon after. The asylum officer determined that Kumar had a credible fear of persecution if forced to return to India.

The Department of Homeland Security ("DHS") served Kumar with a Notice to Appear; he conceded removability and sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Kumar testified in support of his applications at two removal hearings, but the IJ found him not credible and denied all of his claims. The BIA dismissed Kumar's appeal, citing four factors supporting the adverse credibility determination: inconsistent statements, a letter that conflicted with Kumar's testimony, the implausibility of Kumar's testimony, and Kumar's demeanor. Neither the IJ nor the BIA analyzed whether, in the absence of the adverse credibility finding, Kumar would have established eligibility for any of his claims.

## II. ANALYSIS

### A. STANDARD OF REVIEW

In *Alam v. Garland*, the en banc court clarified the standard for reviewing adverse credibility determinations under the REAL ID Act: "[W]e must look to the 'totality of the circumstances[] and all relevant factors.'" 11 F.4th at 1137 (quoting 8 USC § 1158(b)(1)(B)(iii)). We emphasized that "[t]here is no bright-line rule under which some number of inconsistencies requires sustaining or

rejecting an adverse credibility determination—our review will always require assessing the totality of the circumstances." *Id.*

Because "the BIA reviewed the IJ's credibility-based decision for clear error and relied upon the IJ's opinion as a statement of reasons but did not merely provide a boilerplate opinion," we review "the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's . . . decision in support of those reasons." *Lai v. Holder,* 773 F.3d 966, 970 (9th Cir. 2014) (internal quotations omitted). "Stated differently, we do not review those parts of the IJ's adverse credibility finding that the BIA did not identify as most significant and did not otherwise mention." *Id.* (internal quotations omitted).

Taking the totality of the circumstances into account, we review the BIA's credibility determination for substantial evidence. *See Li v. Garland*, 13 F.4th 954, 956 (9th Cir. 2021) (citing *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010)).

## B.  THE BIA'S ADVERSE CREDIBILITY FINDING

The BIA identified four factors underlying its adverse credibility finding. In sum, we hold that most of the factors relied on by the IJ, and identified as significant by the BIA, in making the adverse credibility determination are *not* supported by the record—that is, several of the alleged inconsistencies are not inconsistent at all, and the implausibility finding is wholly unsupported. Because so little remains in support of the adverse credibility finding, we grant the petition and remand to determine whether the totality of the circumstances continues to support that finding.

## 1. Inconsistency of Statements

The first reason cited by the BIA was an inconsistent statement: Kumar stated during the CFI that he was released from police custody without his family paying a bribe, but two years later he testified to the IJ that his family did pay a bribe. The BIA found no clear error in the IJ's conclusion that this discrepancy undermined his credibility. The BIA also identified two additional inconsistencies as relevant factors in the adverse credibility determination: first, while Kumar testified that he was "beaten all over his body" during the December 2013 attack, his asylum statement describing the same incident asserts only that he was "beaten on his arms and legs," and second, while Kumar testified that he lost consciousness in the December 2013 attack, his asylum statement describing the same incident does not mention unconsciousness.

Our cases caution against relying too heavily on inconsistencies that could be attributable to simple human error or reluctance. *See, e.g.*, *Shrestha*, 590 F.3d T 1044–45 (describing the inevitability of some inconsistencies given the normal limits of human memory); *Singh v. INS*, 292 F.3d 1017, 1023–24 (9th Cir. 2002) (acknowledging that individuals who have suffered abuse at the hands of their governments may be reluctant to fully answer all questions during the first meeting with U.S. officials). In his CFI, Kumar was not asked specifically about a "bribe," and his response to the question, "Did your family pay for you to be released?" was ambiguous and potentially indicated that he did not understand the question. Further, the record of this interview are notes and not a verbatim transcript, and Kumar later freely volunteered that his family had paid a "bribe."

But the REAL ID Act allows IJs to consider any factor as relevant to the totality of circumstances, even if not

conclusive on its own. This is true of an inconsistent statement, so long as Kumar's explanation for the inconsistency is considered. *Shrestha*, 590 F.3d at 1045 ("When an inconsistency is cited as a factor supporting an adverse credibility determination . . . the petitioner's explanation for the inconsistency, if any, should be considered in weighing credibility.").

Kumar received such an opportunity to explain the inconsistency when he was cross-examined by the government. *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) ("[T]he opportunity to explain may be provided through cross-examination by the government, or even direct examination by the alien's own attorney. . . .") (internal citations omitted)). Here, after Kumar testified that his family paid a bribe to secure his release, the government attorney read Kumar's earlier statement from the CFI and initiated the following exchange:

> Q. Do you remember saying that?
>
> A. I don't remember that.
>
> Q. Are you saying that you did not say that?
>
> A. The bribe was paid. That's how they released me.
>
> Q. Are you saying that you did not tell the Immigration Officer that your family did not pay for you to be released?
>
> A. I don't remember that.

Of course, an IJ must consider an applicant's explanation for an inconsistency if the explanation is "reasonable and plausible." *Rizk*, 629 F.3d at 1088 (quotations and citations omitted); *see also Shrestha*, 590 F.3d at 1045.  When asked about his testimony, Kumar said that he did "not remember" making the earlier statement.  Given that two years had passed, this may very well have been an honest answer, but it was hardly an explanation for the inconsistency.

Because the IJ provided Kumar with a sufficient opportunity to explain the inconsistency, this reason underlying the adverse credibility is supported by the record and warrants some weight.  Yet the same is not true with respect to the two additional inconsistencies relied upon by the BIA—for the simple reason that neither was, in fact, an inconsistency.  Being "beaten on [one's] arms and legs" is not inconsistent with being "beaten all over [one's] body." Nor are the accounts conflicting simply because one recounting of a violent attack was more detailed than the other.  The record does not support the BIA's reliance on these other alleged inconsistencies.

## 2.  Third-party letter

The BIA also cited a third-party letter from a BSP leader that described Kumar's role in the party, his persecution, and the various attacks he suffered.  The IJ concluded that the letter called into question Kumar's credibility because it did not mention a fourth incident of torture to which Kumar testified, and because the letter noted that Kumar's father is a leading member of the political party, while Kumar did not mention this fact until asked about it.  The BIA found that the letter "materially conflicts" with Kumar's testimony because it does not describe one of the four attacks and because it notes that Kumar's father was a leader of the

political party, a fact that Kumar had not brought up on his own.

The letter did not undermine Kumar's testimony. Though the BIA concluded that the letter "materially conflicts" with Kumar's testimony, that finding overlooks the fact that the letter corroborated three of the four violent incidents, bolstering Kumar's credibility rather than undermining it. The letter's omission of a single fact that was included in Kumar's oral testimony does not render the letter inconsistent. *See Singh v. Ashcroft*, 301 F.3d 1109, 1112 (9th Cir. 2002) (holding that there was no inconsistency where a doctor's letter did not mention all of the applicant's injuries). The mention of Kumar's father as a party leader is neither a "glaring inaccuracy" nor is it probative of credibility. Kumar was not asked about his father's role in the party until the letter was submitted and, when asked, he stated that his father was a member. The record does not support the conclusion that the letter highlighted an inconsistency in Kumar's testimony.

### 3. Plausibility

The third factor cited by the BIA was the plausibility of Kumar's testimony. The IJ found it implausible that Kumar would not have suffered more injuries after sustaining an attack for thirty minutes. The BIA agreed, concluding that Kumar only "suffered minimal injuries." This conclusion relied on speculation and conjecture, which "cannot form the basis of an adverse credibility finding." *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000). Here, the IJ relied on speculation about the force of the beating, the medical implications of that force, and the appropriate treatment for various injuries. *See Jibril v. Gonzales*, 423 F.3d 1129, 1135–36 (9th Cir. 2005) (improper speculation concerning whether petitioner could have survived gunshot wound). In

doing so, both the IJ and the BIA improperly disregarded critical evidence, including that Kumar took fifteen days to recover, and mischaracterized other evidence—concluding improperly that the injuries were "minimal," despite no such evidence in the record. *See Chawla v. Holder*, 599 F.3d 998, 1008 (9th Cir. 2010) (IJ's skepticism as to the plausibility of testimony was based on mischaracterization of testimony and thus failed to support the adverse credibility determination).

### 4. Demeanor

The fourth credibility issue cited by the BIA was Kumar's demeanor. The BIA deferred to the IJ's conclusion that Kumar's "affect" suggested that he was "reciting a rehearsed story, rather than relating incidents he had personally experienced." The IJ found it suspicious that Kumar described trauma with a "flat" affect. We give "special deference" to the IJ's observations about demeanor, *Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999), and, indeed, "[a]ll aspects of the witness's demeanor, including . . . the modulation or pace of his speech and other non-verbal communication—may convince the observing trial judge that the witness is testifying truthfully or falsely." *Huang v. Holder*, 744 F.3d 1149, 1153 (9th Cir. 2014) (quotations and citations omitted). The IJ's perception of Kumar's demeanor—though subjective—passes this low bar.

Having sorted through the BIA's bases for the adverse credibility determination, we conclude that two of the three alleged testimonial inconsistencies are in fact not inconsistent at all; the alleged inconsistency between the third-party letter and Kumar's testimony is wholly illusory; and the basis for implausibility relies entirely, and

improperly, on conjecture. All that's left is Kumar's flat affect and the ambiguous inconsistency related to a bribe.

In *Alam,* we declined to draw a bright line or engage in a number-counting analysis, instead noting that no specific number of inconsistencies requires sustaining or rejecting an adverse credibility determination. In the end we must affirm credibility findings only when they are supported by the "totality of the circumstances," 11 F.4th at 1137. While our precedents do not provide a roadmap for navigating a post-*Alam* landscape, they do suggest that falsehoods and fabrications weigh particularly heavily in the adverse credibility inquiry. In the recent case of *Iman v. Barr*, we held that "the IJ and the BIA erred by relying on an omission that has no tendency to show Iman fabricated his claims of persecution when considered in light of the totality of the circumstances." 972 F.3d 1058, 1069 (9th Cir. 2020). Likewise, in *Li v. Garland*, this court's first published decision applying *Alam*, we held that the totality of circumstances supported the adverse credibility determination in large part because the petitioner had submitted false information in her asylum and visa applications. 13 F.4th at 960–61. This case stands in contrast to *Li* because such clear falsehoods and fabrications in official submissions are entirely absent.

We acknowledge that in some circumstances, our "totality of circumstances" review of the BIA's determination permits us to uphold an adverse credibility finding, even where we conclude that some of the grounds are not supported by substantial evidence. However, the several rejected findings here all but gut the BIA's adverse credibility determination. For this reason, we remand to the BIA to determine in the first instance whether the remaining

factors—considered on their own—suffice to support an adverse credibility determination.

**PETITION GRANTED.**