**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 31 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SYLVESTER A. MORFAW, | No. 21-70450 |
| Petitioner, | Agency No. A213-186-758 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 8, 2022
Phoenix, Arizona

Before: PAEZ, CLIFTON, and WATFORD, Circuit Judges.

Petitioner Sylvester Morfaw, a citizen of Cameroon, petitions for review of

the decision of the Board of Immigration Appeals ("BIA") affirming the

Immigration Judge's denial of asylum, withholding of removal, and Convention

Against Torture ("CAT") relief. We have jurisdiction pursuant to 8 U.S.C. § 1252.

We grant the petition and remand to the agency for further proceedings.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

"We review factual findings, including adverse credibility determinations, for substantial evidence." *Mukulumbutu v. Barr*, 977 F.3d 924, 925 (9th Cir. 2020) (citation omitted). We review those reasons "explicitly identified by the BIA" and "the reasoning articulated in the IJ's oral decision in support of those reasons," but not "those parts of the IJ's adverse credibility finding that the BIA did not identify as most significant and did not otherwise mention." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (quotation marks and citations omitted). Legal questions are reviewed *de novo*. *Shrestha v. Holder*, 590 F.3d 1034, 1048 (9th Cir. 2010).

Morfaw alleges that he escaped Cameroon after being detained and jailed by the police for more than a month because of his suspected membership in an Anglophone advocacy organization (the Southern Cameroons National Council, or SCNC), an episode that furnished the basis for his persecution and torture claims. The IJ found Morfaw not credible, pointing to inconsistencies between his testimony and the documentary evidence submitted to the IJ, his testimony during the credible fear interview, and answers he gave to a Customs and Border Patrol Officer ("CBP") officer immediately following his entry into the United States at the San Ysidro Port of Entry. "[A]n adverse credibility determination must be made after considering 'the totality of circumstances, and all relevant factors.'" *Id.* at 1040 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). "[R]elevant factors will include demeanor, candor, responsiveness of the applicant or witness, the inherent

plausibility of the applicant or witness's account, consistency between the applicant or witness's written and oral statements, internal consistency of each statement, and consistency of statements with other evidence." *Id.*

Informal interviews, such as the border interview, may be considered in an adverse credibility determination if they have "sufficient indicia of reliability." *Mukulumbutu*, 977 F.3d at 926. Here, the border interview was conducted in English. Morfaw, however, speaks Cameroonian Pidgin English, a distinct language, and he utilized the services of an interpreter throughout the rest of the proceedings. He has challenged the agency's reliance on the border interview on the grounds that, among other reasons, the lack of language assistance rendered the interview insufficiently reliable to constitute substantial evidence in support of an adverse credibility determination.

The lack of interpreter assistance at the border interview raises serious concerns about whether Morfaw's answers could be used to impeach his later testimony, during which he did have language assistance.[1] *See Singh v. Gonzales*,

---

[1] Moreover, while the BIA noted that Morfaw had "signed the sworn [border interview] statement after initialing each page, attesting under oath that he had read, or had it read back to him and that it accurately reflected what was said during his interrogation," the jurat Morfaw signed only reflected he reviewed and attested to a brief 1-page, 4-question statement, not the full 10-page border interview notes. Indeed, the IJ had not commented on the attestation in the decision. At the hearing, the IJ explicitly declined to conclude that Morfaw had attested to the contents of each page, and the government withdrew its questions on the matter.

403 F.3d 1081, 1088 (9th Cir. 2005). At oral argument, the government disclaimed

reliance on the border interview. In view of that disclaimer, we conclude that the

reasons supporting the adverse credibility determination that were predicated on

the border interview are not supported by substantial evidence. This specifically

includes inconsistencies about what happened to Morfaw's passport (albeit not to

the extent that Morfaw testified inconsistently and evasively on this matter at the

hearings before the IJ), inconsistencies about the length of his detention (except

insofar as his wife's declaration was inconsistent with his later testimony,

addressed below), and inconsistencies about his SCNC membership.[2]

Discounting the border interview does not eliminate all of the reasons

supporting the adverse credibility determination. The BIA also relied on his

inconsistent testimony at the merits hearing and in the documentary evidence about

his release from prison, and on the issue of what happened to his passport. But here

---

[2]     The government contends that Morfaw "never challenged the credibility finding regarding his inconsistent testimony that he did, or did not, attend SCNC meetings or distribute flags at rallies," a supposed discrepancy between the credible fear interview and the merits hearing upon which the IJ relied. We see no discrepancies between the asylum interview and the merits hearing on the matter of Morfaw's participation in SCNC activities. But even if Morfaw waived that argument, the SCNC activities would not factor into our holding. Our review is limited to those grounds upon which the BIA relied, *Lai*, 773 F.3d at 970, and the BIA only held that there were inconsistencies between the *border interview* and Morfaw's later testimony at the asylum interview and hearings before the IJ as to his SCNC activities—not, as the IJ had held, between the asylum interview and merits hearings.

too, the BIA gave imprecise treatment to some aspects of Morfaw's testimony and failed to consider his explanation for certain inconsistencies. Specifically, both the IJ and the BIA conflated the time of Morfaw's release from prison with the time that he left for Douala. While the agency held that he gave inconsistent answers about the former event, the record shows that at least some of those answers referred to the latter event. The IJ and the BIA also failed to discuss Morfaw's facially plausible explanation for the inconsistency between his wife's declaration and his testimony about his release date from prison.

"There is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination—our review will always require assessing the totality of the circumstances." *Alam v. Garland*, 11 F.4th 1133, 1134 (9th Cir. 2021) (en banc). The inconsistencies discussed above were sufficiently important that we cannot be confident that the agency would have reached the same result had it not relied on them. Accordingly, based on the totality of the circumstances, we grant the petition for review and "remand to the BIA to determine in the first instance whether the remaining factors—considered on their own—suffice to support an adverse credibility determination." *Kumar v. Garland*, 18 F.4th 1148, 1156 (9th Cir. 2021).

**PETITION GRANTED; REMANDED.**