**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

YAN JIN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.   19-70527

Agency No. A208-064-305

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 8, 2023
Pasadena, California

Before: MURGUIA, Chief Judge,** and HURWITZ and R. NELSON, Circuit
Judges. Dissent by Judge R. Nelson.

Yan Jin, a native and citizen of China, petitions for review of a decision of the

Board of Immigration Appeals ("BIA") dismissing her appeal from an order of an

immigration judge ("IJ") denying asylum and withholding of removal.  Although

---

*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**       Pursuant to Ninth Circuit General Order 3.2.h, Chief Judge Murguia
was drawn by lot to replace Judge Kleinfeld.  Chief Judge Murguia has reviewed the
record and briefs in this case and listened to the oral argument before the prior panel.

stating that nothing in Jin's demeanor suggested a lack of credibility, the IJ found Jin not credible because of the purported implausibility of several aspects of her testimony and therefore denied relief.

We have jurisdiction over Jin's petition for review under 8 U.S.C. § 1252. We review the agency's "factual findings, including adverse credibility determinations, for substantial evidence." *Lalayan v. Garland*, 4 F.4th 822, 826 (9th Cir. 2021) (cleaned up). Applying that standard, we grant the petition and remand to the BIA for further proceedings.

1. Substantial evidence does not support the agency's finding that Jin's credibility was undermined because she withdrew an asylum application to the U.S. Citizenship and Immigration Services ("USCIS"), instead opting to proceed directly to Immigration Court. Neither the BIA nor the IJ explained how this bore on Jin's credibility, and we discern no reason. Although the BIA stated it was "not clear" why Jin believed withdrawal would expedite her application, Jin expressly explained that she did so under her lawyer's guidance and because she did not want to continue an already lengthy wait for a USCIS hearing. Notably, the IJ acknowledged that she had seen many other petitioners do the same and failed to articulate any "specific and cogent" reason for disbelieving Jin's explanation. *Id.* at 836.

2. Substantial evidence also does not support the agency's finding that Jin's account of travelling with a pastor to help North Korean defectors was implausible.

2

*Id.* at 836–37, 838 (implausibility findings must be "supported by evidence in the record" and "based on reasonable assumptions").

a. The IJ found it "difficult to believe that a pastor would allow a minor to accompany him" on an "indisputably dangerous journey." But Jin, although perhaps technically a minor, was merely days from turning eighteen at the time of the trip, which entirely consisted of a drive to a town thirty to forty minutes away, waiting in the car for five minutes while the pastor retrieved two North Koreans from a home, and a return to her hometown. The IJ and BIA cited nothing contradicting this testimony. *Id.* at 833 ("An implausibility finding is based on speculation and conjecture when the witness's testimony is uncontroverted by any evidence that the IJ can point to in the record." (cleaned up)). Nor did they cite "specific instances in the record" supporting the assumption that the short trip was so obviously dangerous that the pastor would not allow a nearly adult young woman to come. *Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010).

Indeed, when asked to explain why the pastor would take her on the trip, Jin responded that he was staying at her home when he received a call about the North Koreans, and that she asked to go because she wished to help. This was consistent with testimony that she attended an ethnically Korean house church that ordinarily assisted North Koreans in China. The agency improperly disregarded this explanation, simply stating that Jin's age rendered her story implausible. *See*

3

*Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th Cir. 2022) ("If the noncitizen offers an explanation that is reasonable and plausible, the IJ has to provide a specific and cogent reason for rejecting the explanation." (cleaned up)).

The IJ's assumption that it is inherently implausible that a woman almost eighteen years of age would not tell her guardians before going with a trusted pastor on a brief trip to a nearby town to help North Korean refugees also rests on speculation. *Lalayan*, 4 F.4th at 838. Jin testified that the trip was not planned, that the pastor learned about the North Koreans while her aunt and uncle were not at home, and that the trip occurred promptly thereafter.

b. The agency also found Jin's testimony implausible because she failed to submit a Chinese police summons and bail receipt with her initial asylum application. But, Jin was not asked about the omitted documents before the IJ, and an IJ "engages in impermissible speculation and conjecture when he or she bases an implausibility finding on an issue that the petitioner was not asked to address during the merits hearing." *Id.* at 834.

c. The BIA also stated that the "believability" of Jin's account was "undermined" because a short letter she submitted from her uncle "does not mention the pastor by name" or state "that the pastor had been living in their household." But "it is well established that the mere omission of details is insufficient to uphold an adverse credibility finding," *Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014)

4

(cleaned up), and "[i]f discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility," *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000) (cleaned up).

3. Jin obtained a new passport about a month before the encounter with the North Korean defectors. The IJ found that this timing bore on her credibility because Jin testified that she had no specific reason for renewing her passport then or any immediate plans to use it. But even assuming the relevance of the timing of the passport issuance, credibility determinations must be based on "the totality of the circumstances," 8 U.S.C. § 1158(b)(1)(B)(iii), and "the several rejected findings here all but gut the . . . adverse credibility determination," *Kumar v. Garland*, 18 F.4th 1148, 1156 (9th Cir. 2021). We remand to the BIA to consider whether the surviving finding "suffice[s] to support an adverse credibility determination," *id.*, and if not, to consider Jin's other challenges to the IJ's denial of relief.

**PETITION GRANTED** and **REMANDED.**

*Jin v. Garland*, No. 19-70527

R. NELSON, Circuit Judge, dissenting:

I respectfully dissent. The immigration judge (IJ) found the petitioner Yan Jin not credible because of the implausibility of her testimony, and the Board of Immigration Appeals (BIA) affirmed that finding. Sitting as the third layer of process for Jin's asylum and withholding-of-removal claims, our court plays a limited role. We evaluate factual findings under an "extremely deferential" standard, *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003), imposed by Congress: "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). And our deference is even more pronounced when dealing with adverse credibility determinations, which "only the most extraordinary circumstances will justify overturning." *Iman v. Barr*, 972 F.3d 1058, 1064 (9th Cir. 2020) (quoting *Jin v. Holder*, 748 F.3d 959, 964 (9th Cir. 2014)). Applying these demanding standards, we ought to deny the petition.

At the core of the adverse credibility determination is the finding that Jin's account of the events giving rise to her asylum claim—her story of a pastor taking her to assist North Korean defectors—was implausible. Implausibility findings are permissible grounds for credibility determination; indeed, they are specifically identified in the REAL ID Act. 8 U.S.C. § 1158(b)(1)(B)(iii) ("a trier of fact may

1

base a credibility determination on . . . the inherent plausibility of the applicant's or witness's account"). So the sole question before us is whether "any reasonable adjudicator would be compelled to conclude to the contrary." § 1252(b)(4)(B).

Here, the IJ's implausibility conclusion was sensible. Jin's story is certainly spectacular: a teenaged girl going with a pastor to the North Korean/Chinese border to help smuggle North Korean refugees into China. The IJ was understandably baffled by, as Jin describes it, the choice of a "trusted pastor" to take a seventeen-year-old young woman on a trip to engage in criminal conduct that made her risk "being incarcerated, beaten, and forced to stop practicing her chosen religion." More confusing was the alleged choice to go on this dangerous mission without anyone telling Jin's guardians, her aunt and uncle, with whom the pastor had been living until the incident. Also bizarre was the lack of any apparent reason for the pastor to take Jin; her testimony reveals that she merely sat in the car and provided no apparent assistance. All in all, it was reasonable for the IJ to doubt this story—especially given the convenient timing of Jin's passport renewal (an implausibility finding that the majority does not disturb). Perhaps the majority would have come to a different conclusion in the first instance, but it fails to sufficiently explain why no reasonable factfinder could agree with the IJ here.

The majority instead finds error in the implausibility finding by saying no substantial evidence supports it. The majority complains that the IJ failed to cite

2

evidence contradicting Jin's account. But an implausibility finding does not require "an express conflict" between an applicant's story and specific "documentary evidence." *Lalayan v. Garland*, 4 F.4th 822, 835 (9th Cir. 2021). Rather, the IJ may "apply common sense" simply "in light of background evidence" like country condition reports. *Id.* at 835–36. Or the IJ may ask "simple follow-up questioning regarding a potentially implausible account" and conclude there was a "failure to provide a persuasive explanation." *Id.* at 836.

Under the proper standards, substantial evidence in the record supports the implausibility finding. For example, the IJ recited country conditions reports that both Chinese authorities and North Korean agents operating "clandestinely" in China surveil for North Koreans escaping into China. The record further recounts that the Chinese government refuses to acknowledge refugee status for North Koreans fleeing into China and that "numerous credible reports of harassment, detention, and abuse of North Korean asylum-seekers, and of arrest and detention of some Chinese citizens who provided food, shelter, transportation, and other assistance to North Korean asylum-seekers." This evidence justifies the IJ's application of her own common sense in reaching the implausibility finding. The IJ also asked follow-up questions and Jin had the chance to address what the IJ found "odd" about Jin's story, but Jin's explanations did "not resolve the . . . implausibility concerns." *Cf. id.* ("Just as a witness's explanation might clarify an issue, . . . his or

3

her failure to provide a persuasive explanation or challenge an assumption can serve as the basis of an implausibility finding.").

In sum, I would not disturb the IJ's implausibility finding about Jin's account with the pastor and, in turn, deny petition. Paired with the untouched implausibility finding about the passport's timing, this finding offers reason enough to leave intact the adverse credibility determination and deny the petition. Indeed, if her story—which undergirds Jin's claim of past persecution—is not believed, the entire basis of her asylum claim falls apart. Given our caselaw's instruction that "only the most extraordinary circumstances will justify overturning an adverse credibility determination," *Iman*, 972 F.3d at 1064 (quoting *Jin*, 748 F.3d at 964), I would respect the IJ's findings, which dispose of Jin's claims.