NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EMBRI NOEMI FUNEZ-RAMOS,

Petitioner,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 20-72403

Agency No.
A206-272-419

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 6, 2026**
Pasadena, California

Before: LEE, KOH, and DE ALBA, Circuit Judges.

Petitioner Embri Noemi Funez-Ramos, a native and citizen of Guatemala,

petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of her

appeal of an Immigration Judge's ("IJ") denial of her application for asylum,

withholding of removal, and protection under the Convention Against Torture

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition.

Where, as here, the BIA agrees with the IJ's reasoning and supplements that reasoning with its own analysis, the court may review both decisions. *See Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016). We review the denial of asylum, withholding of removal, and CAT protection for substantial evidence. *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). We also review adverse credibility determinations for substantial evidence. *Kumar v. Garland*, 18 F.4th 1148, 1153 (9th Cir. 2021); *see* 8 U.S.C. § 1158(b)(1)(B)(iii) (credibility determinations must be based on "the totality of the circumstances, and all relevant factors"). Under this standard, we must uphold the BIA's determination unless the evidence compels a contrary conclusion. *Duran-Rodriguez*, 918 F.3d at 1028.

1.      Substantial evidence supports the IJ's adverse credibility finding. Per the REAL ID Act, IJs "must base credibility determinations on 'the totality of the circumstances, and all relevant factors.'" *Kumar*, 18 F.4th at 1151 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Here, Funez-Ramos initially claimed she feared returning to Guatemala to live with her grandparents, whom she claimed were physically and verbally abusive. Funez-Ramos' initial claim is not only inconsistent but fundamentally incompatible with her later claimed kidnapping and sexual abuse. The alleged kidnapping and sexual abuse incident do not simply

2                                                                    25-2186

supplement additional details that were inconsistent with her initial statements, but rather present two irreconcilable claims of two different reasons of her claimed fear that are based on two different set of facts. Although we have held that an applicant's "failure to mention her rape at an earlier stage in an immigration proceeding" does not necessarily support an adverse credibility finding, Funez-Ramos' case is distinguishable. *See Mousa v. Mukasey*, 530 F.3d 1025, 1027 (9th Cir. 2008). In those cases, the applicants' later disclosure of sexual assault was justified by a "compelling explanation." *Id.* at 1027–29; *see also Kebede v. Ashcroft*, 366 F.3d 808, 811 (9th Cir. 2004) ("A victim of sexual assault does not irredeemably compromise his or her credibility by failing to report the assault at the first opportunity" if she later provides a strong, unrebutted explanation). Here, Funez-Ramos' kidnapping and sexual assault are a completely new theory of claimed fear that is inconsistent with her initial theory.

Additionally, Funez-Ramos failed to adequately explain her inconsistent theories of fear. For example, as to her second theory, she could not explain what her grandparents did during the week she was kidnapped, and why she did not ask for help while she was left alone in hotel rooms for hours when kidnapped. Although the IJ considered Funez-Ramos' age and her testimony of being ashamed to disclose the sexual assault initially, the IJ permissibly found that her testimony appeared rehearsed given Funez-Ramos' undetailed and vague testimony. *See*

3                                        25-2186

*Shrestha v. Holder*, 590 F.3d 1034, 1045–46, 1048 (9th Cir. 2010) (applicant declined to respond to certain questions, gave ambiguous or incomprehensible responses to others, and provided no detail on key points).

Lastly, in the absence of credible testimony, Funez-Ramos failed to submit reasonably available corroborating evidence of her kidnapping and sexual assault. *See Yali Wang v. Sessions*, 861 F.3d 1003, 1007, 1008–09 (9th Cir. 2017). Although Funez-Ramos asserted that she had told her grandparents about the kidnapping and sexual assault, the declaration submitted by her grandfather does not corroborate this information. Funez-Ramos also failed to present testimony from her sister, who had allegedly also been threatened by Funez-Ramos' alleged abuser, knew about Funez-Ramos's kidnapping and sexual assault, and lived with Funez-Ramos in California. When asked to explain her sister's absence, Funez-Ramos said her sister refused to testify and when asked why, she said she did not know because she had not asked why. *See Singh v. Holder*, 638 F.3d 1264, 1270–71 (9th Cir. 2011) ("If the asylum seeker whose credibility has been questioned testifies that his family was subject to . . . [persecution], and corroboration is readily available because members of the family live with him in California, it is reasonable to question his credibility if none of them testify to corroborate his account.").

Thus, the IJ and the BIA did not abuse their discretion in determining that Funez-Ramos could not establish her eligibility for asylum and withholding of removal. *See Garcia v. Holder*, 749 F.3d 785, 790–91 (9th Cir. 2014).[1]

2.      Substantial evidence supports the BIA's denial of Funez-Ramos' claim for CAT relief. To qualify for CAT relief, Funez-Ramos must show "a chance greater than fifty percent that [s]he will be tortured if removed." *Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1154 (9th Cir. 2022) (quoting *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011)). Funez-Ramos "must also establish that [s]he would experience torture with the 'acquiescence'" of government officials. *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020). The only evidence Funez-Ramos presented for this claim was generalized evidence of country conditions. This is insufficient to show a particularized likelihood of torture upon removal to Guatemala. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) ("[G]eneralized evidence of violence and crime in [Guatemala]" is "insufficient to meet" the "more likely than not" standard for CAT protection). This evidence also shows that although the Guatemalan National Civil Police often fail to respond to domestic violence and receive minimal training, they

---

[1]      We need not address the IJ's alternative denial of Funez-Ramos' asylum and withholding of removal claims on the merits. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

were, nonetheless, prosecuting violence against women and that the government was taking steps to protect women. This weighs against Funez-Ramos' claim that authorities would acquiesce in the event of future torture. *See Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) (neither "[t]he inability to bring criminals to justice," nor testimony that a police officer "took a bribe from a robber and released him," compelled a finding of a clear probability of acquiescence).

**AFFIRMED.**[2]

---

[2] Funez-Ramos' procedural claims are unavailing. First, the record does not support Funez-Ramos' assertion that the IJ was hostile. *Cf. Reyes-Melendez v. INS*, 342 F.3d 1001, 1007–08 (9th Cir. 2003). Second, Funez-Ramos' claim that her own statements on the Form I-213 were unreliable are disproven by her own testimony in immigration court where she admitted that she made those very statements.