NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 24 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOAO PEDRO MARTINS; T. M. M., <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 25-30 <br><br> Agency Nos. <br> A246-843-543 <br> A246-843-544 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 2, 2026
Seattle, Washington

Before: PAEZ, BEA, and BRESS, Circuit Judges.

Joao Pedro Martins ("Martins") and his minor daughter, citizens of Angola,

petition for review of an immigration judge's ("IJ") denial of their applications for

asylum, withholding of removal, and relief under the Convention Against Torture

("CAT").[1]

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] Martins's minor daughter filed her own application for asylum, withholding of removal, and relief under CAT. She is also listed as a derivative beneficiary of Martins's asylum application.

We have jurisdiction under 8 U.S.C. § 1252. Where, as here, the Board of Immigration Appeals ("BIA") "adopts and affirms the IJ's order pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), and expresses no disagreement with the IJ's decision, we review the IJ's order as if it were the BIA's." *Chuen Piu Kwong v. Holder*, 671 F.3d 872, 876 (9th Cir. 2011). "We review factual findings, including adverse credibility determinations, for substantial evidence." *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014). We grant Martins's petition.

In assessing credibility, the agency must look to the "totality of the circumstances and all relevant factors." *Alam v. Garland*, 11 F.4th 1133, 1135 (9th Cir. 2021) (en banc). The totality of the circumstances approach to adverse credibility determinations "imposes the requirement that an IJ not cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010). Under the REAL ID Act, an IJ may base credibility determinations on factors that do not "go[] to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). However, an IJ cannot base an adverse credibility determination solely on an "utterly trivial inconsistency" that has "no bearing on a petitioner's veracity." *Shrestha*, 590 F.3d at 1043–44.

Here, the IJ based his adverse credibility determination on four inconsistencies, one omission, one implausibility, and three instances of non-

2                                          25-30

responsiveness.  Of these nine findings, we conclude that eight are not supported by substantial evidence.  This warrants remand of Martins's asylum, withholding of removal, and CAT claims.  *See Kumar v. Garland*, 18 F.4th 1148, 1156 (9th Cir. 2021).

### 1. *Inconsistencies.*

**A.     Meeting Location.**  The IJ determined that Martins "testified inconsistently regarding the initial meeting location" of a political protest led by the National Union for Total Independence of Angola ("UNITA") on February 13, 2021.  We conclude that this purported inconsistency is unsupported.  *See Bhattarai v. Lynch*, 835 F.3d 1037, 1046 (9th Cir. 2016).  The record compels the conclusion that Martins's declaration was consistent with his testimony: he and other protestors marched from his "home" in Cazenga to a main street in Cazenga.  Whether "home" is defined specifically as Martins's "compound" or more broadly as his neighborhood of Hojihanda, both are located "in Cazenga."  None of these details conflict with the statement in his declaration that the demonstration began at his "home in Cazenga."  Accordingly, the record compels the conclusion that this testimony was not a genuine inconsistency.  *See Kumar*, 18 F.4th at 1154.

**B.     Time in the Democratic Republic of Congo ("DRC").**  The IJ next determined that Martins "provided inconsistent testimony regarding his time in DRC."  The record, however, compels the conclusion that Martins's testimony was

3                                                   25-30

the result of his initial misunderstanding of government's counsel's question, i.e., "simple human error." *See Kumar*, 18 F.4th at 1153. When government's counsel specified that he was inquiring about the last time Martins "stepped on DRC soil," after Martins asked for clarification, Martins testified that he "step[ped] in the Congolese territory" for business purposes, through a temporary pass made available to cross-border traders. Additionally, the IJ erred because he did not give Martins an opportunity to explain this inconsistency. *See Perez-Arceo v. Lynch*, 821 F.3d 1178, 1184 (9th Cir. 2016). Contrary to the IJ's view, Martins should have been given such an opportunity, as the inconsistency was not "obvious." Rather, as the IJ observed during this exchange, Martins was "just asking for clarification."

     **C.**    **Death of Martins's Father.** The IJ also faulted Martins for testifying inconsistently about the circumstances of his father's death. We conclude that any inconsistency between Martins encountering his father "already dead" and a "[f]ew seconds before he finally was dead" is trivial. *See Shrestha*, 590 F.3d at 1043–44. It therefore cannot form the basis of an adverse credibility determination. *See id.*

     **D.**    **Timing of Martins's Cross-Border Salesman Work.** The IJ identified an inconsistency between Martins's declaration and his testimony regarding the period in which he worked as a cross-border salesman. The IJ further determined that Martins's explanation for this inconsistency was not

satisfactory.  This finding is supported by substantial evidence.

**2.** ***Omission.*** According to the IJ, Martins omitted key facts about his participation in the 2011 UNITA protest from his declaration, even though he later testified about being beaten and requiring medical treatment.  As a threshold matter, there is a difference between "'the mere omission of details'" and "inconsistencies created by direct contradictions"—the former are "less probative of credibility." *Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014) (quoting *Singh v. Gonzales*, 403 F.3d 1081, 1085 (9th Cir. 2005)).  While Martins's declaration did not provide details about the 2011 protest, it states that he "took part in various demonstrations in which [his] parents were involved."  The greater level of detail in his testimony does not support the adverse credibility determination*, see Arulampalam v. Ashcroft*, 353 F.3d 679, 688 (9th Cir. 2003), when the declaration was worded broadly enough to account for his later testimony and when Martins testified that he fled Angola due to the events of 2021, not 2011, making the events of 2011 less material.  *See Shrestha*, 590 F.3d at 1044.

**3.** ***Implausibility.*** The IJ found that, because Martins's mother was a "well-known UNITA activist," it was not plausible that she would remain in the hospital for a full week, while Martins would feel compelled to leave after one day due to his fear of police retaliation.  This reasoning is flawed.  First, it is based on the IJ's speculation regarding Martins's mother's fear of the police and her medical

5                                    25-30

condition. *See Kumar*, 18 F.4th at 1155. There is no evidence in the record regarding how Martins's mother's fear of the police compared to Martins's. Further, there is evidence in the record that his mother suffered greater physical harm than Martins during the attack. Second, this implausibility cannot support an adverse credibility finding because Martins was not offered an opportunity to explain it. *See Lalayan v. Garland*, 4 F.4th 822, 836 (9th Cir. 2021).

**4.** *Non-Responsiveness.* The IJ outlined three instances in which Martins's non-responsiveness weighed against his credibility. "'[T]o support an adverse credibility determination based on unresponsiveness, the [IJ] must identify particular instances in the record where the petitioner refused to answer questions asked of him.'" *Lalayan*, 4 F.4th at 839 (quoting *Shrestha*, 590 F.3d at 1042). None of the instances identified by the IJ meet this criterion. Rather, the record compels the conclusion that Martins did not refuse to answer these questions.

Because the "rejected findings here all but gut the [IJ's] adverse credibility determination… we remand to the [IJ] to determine in the first instance whether the remaining factor[]—considered on [its] own—suffice[s] to support an adverse credibility determination." *Kumar*, 18 F.4th at 1156. The IJ may also consider whether to reopen the record to allow further testimony bearing on Martins's credibility, including from Martins. We do not address the IJ's finding that Martins's documentary evidence did not "overcome the adverse weight of his

6                                                  25-30

incredible testimony," as the IJ must reconsider Martins's testimony in light of this order. Furthermore, we do not address the IJ's denial of Martins's motion for a continuance.[2]

**PETITION GRANTED.**[3]

---

[2] If, however, on remand, the IJ decides that Martins's credibility cannot be established without additional corroborative evidence, the IJ should consider whether Martins should have the opportunity to present his wife's testimony, so that it may be considered alongside his own.

[3] We grant the motion to stay removal, Dkt. 2, pending issuance of the mandate.

25-30